

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00209-CR

LAWRENCE EDWARD WALKER                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

## FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

------------

## OPINION

----------

### I. INTRODUCTION

Appellant Lawrence Edward Walker appeals his convictions for terroristic threat against a public servant and hindering proceedings by disorderly conduct. In six issues, Appellant argues that the evidence is legally and factually insufficient to support his convictions and that sections 22.07 and 38.13 of the penal code are unconstitutional as applied to him because they violate his right to free speech. We will affirm.

## II. PROCEDURAL BACKGROUND

The State charged Appellant with the offenses of terroristic threat and hindering proceedings by disorderly conduct. Appellant pleaded not guilty to both offenses. After a jury found Appellant guilty of both offenses, the trial court sentenced Appellant to 200 days in jail and a $4,000 fine for each offense. The trial court then suspended Appellant's sentences and placed him on community supervision for twenty-four months for both offenses. This appeal followed.

## III. EVIDENTIARY SUFFICIENCY

In his first and second issues, Appellant argues that the evidence is legally and factually insufficient to support his conviction for terroristic threat. In his fourth and fifth issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction for hindering proceedings by disorderly conduct. The court of criminal appeals recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8, 14 (Tex. Crim. App. Oct. 6, 2010).

Accordingly, we will apply the same standard of review to all of Appellant's sufficiency complaints.

### A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must

presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## B. Applicable Facts

On October 23, 2008, Appellant went to County Criminal Court #4 ("the court") and filled out an application for a court-appointed attorney. Judge Deborah Nekhom is the judge of the court. After Appellant was assigned an attorney, he called Vincent Giardino, the court coordinator, and complained about his attorney. Giardino relayed Appellant's complaint to Judge Nekhom.

On November 7, 2008, Appellant again went to the court for docket. Appellant had been appointed a new attorney, Carey Walker.[1] Upon entering the court, Carey introduced himself to Appellant and asked Appellant to go into the hall with him to talk about Appellant's case. Carey had no prior communication with Appellant.

After less than five minutes of speaking with Appellant, Carey went back into the court and told Judge Nekhom that he did not feel like he could continue to represent Appellant. Judge Nekhom then called Appellant to approach, and Appellant had a "smart-mouthed" and "very sarcastic" tone. Judge Nekhom told Appellant that he needed to cooperate with his attorney, and Appellant kept interrupting her. Judge Nekhom then told Appellant that he needed to hire his

---

[1]Because Appellant's last name and his attorney's last name are the same, we will refer to Carey Walker as "Carey."

4

own attorney because he could not get along with the two attorneys he had been appointed. Appellant stated something to the effect of "Well, I'm not going to do that, so let's just - - let's go, girl." Appellant held out his hands to be handcuffed. Judge Nekhom then held Appellant in contempt of court for three days for his behavior in the courtroom. The bailiff escorted Appellant to the holding cell.

Judge Nekhom then got her court reporter, Michelle Seay, to put her conversation with Appellant on the record. The bailiff got Appellant from the holding cell and brought him back out in front of Judge Nekhom. Judge Nekhom then had essentially the same conversation with Appellant, although this time it was recorded by Seay.

After the second conversation, the bailiffs were escorting Appellant back to the holding cell when Appellant stopped, turned toward Judge Nekhom, "bowed his chest out," and said, "Let's do it, Nekhom. It's me and you now." David Montgomery, a bailiff in Judge Nekhom's court, then opened the door to the holding cell area and quickly placed Appellant inside. After Appellant made the statement, Judge Nekhom had to leave the courtroom to compose herself.

### C. Terroristic Threat

Appellant argues that the evidence is insufficient because he did not make a threat nor did he "threaten to commit any crime of violence." Appellant's sufficiency complaints center around his statement, "Let's do it, Nekhom. It's me and you now."

5

Section 22.07 defines the offense of terroristic threat. Tex. Penal Code Ann. § 22.07 (Vernon Supp. 2010). The relevant portion of section 22.07 provides that a "person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to" "place any person in fear of imminent serious bodily injury." *Id.* § 22.07(a)(2). Additionally, an offense under subsection (a)(2) is a "Class B misdemeanor, except that the offense is a Class A misdemeanor if the offense" "is committed against a public servant." *Id.* § 22.07(c)(2).

The amended information alleged that Appellant

did then and there intentionally threaten to commit an offense involving violence against a person or property, namely by stating to Judge Deborah Nekhom "Let's do it, Nekhom. It's me and you now," with intent to place Judge Deborah Nekhom in fear of imminent serious bodily injury and Judge Deborah Nekhom was a public servant, namely a Tarrant County criminal court judge.

In *Dues v. State*, the Texas Court of Criminal Appeals stated:

Therefore, in order to commit this offense [terroristic threat] the accused must have the specific intent to place any person in fear of imminent serious bodily injury . . . . Intent can be inferred from the acts, words, and conduct of the accused. However, the accused's intent cannot be determined merely from what the victim thought at the time of the offense. Indeed, for this offense to be completed it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury. Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. All that is necessary to complete the offense is that the accused by his threat sought as a desired reaction to place a person in fear of imminent serious bodily injury.

634 S.W.2d 304, 305–06 (Tex. Crim. App. 1982) (internal citations omitted); *see also Swaringen v. State*, No. 02-08-00132-CR, 2009 WL 579328, at *4–5 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (mem. op., not designated for publication).

Judge Nekhom testified that she took Appellant's statement, "Let's do it, Nekhom. It's me and you now," as a threat. She stated that she "feared imminent threat, and he was certainly capable of injuring me. I was frightened." Judge Nekhom testified that she felt that Appellant intentionally meant to put her in fear because of his words, the tone of his voice, and his body language. She stated that the entire morning Appellant had been trying to upset her. Additionally, she stated that her daily routine has been affected since Appellant's statement. Judge Nekhom testified that she is more cautious when she goes places and that she is "very careful." She stated that it is her opinion that Appellant is capable of causing her bodily harm.

Giardino stated that he was escorting Appellant to the holdover when Appellant stopped by the stairwell that led up to Judge Nekhom's bench, turned to face Judge Nekhom, "bowed his chest out," and stated something to the effect of "Let's do it, Nekhom. It's just you and me now." Appellant was approximately five feet away from Judge Nekhom when he made the statement. Giardino stated that Appellant looked angry and that he was not handcuffed at this point.

7

Carey testified that although Appellant made no movement toward Judge Nekhom after he stated, "Let's do it, Nekhom. It's me and you now," he interpreted Appellant's statement as a physical threat towards Judge Nekhom.

Montgomery testified that he was escorting Appellant to the holding cell when Appellant made the threatening statement to Judge Nekhom. He stated that Appellant was not handcuffed. Montgomery then opened the door to the holding area and got Appellant "away from the Judge to stop any further escalation of any possible conflict." Montgomery stated that Appellant turned toward Judge Nekhom when he made the threatening statement. Montgomery stated that he did not have to physically restrain Appellant after the statement. He further stated that he took Appellant's statement as a threat and believed that Appellant intended to put Judge Nekhom in fear.

Chad Lee, a defense attorney, testified that he went into Judge Nekhom's courtroom during the middle of the hearing with Appellant. He stated that Appellant kept talking over Judge Nekhom and that Appellant had "aggressive body language." Lee stated that he took Appellant's statement as a "threatening remark towards the Judge."

Robert Hinton, an attorney, testified that he was in the courtroom when Appellant made the statement to Judge Nekhom. He stated that when Appellant made the statement, his body language was "very threatening. It was a stare, a fixed facial expression, and it was a threat." He stated that the statement was

8

"chilling" and that he felt concerned for Judge Nekhom and for the safety of the courtroom. Hinton stated that after the statement was made, there was "a hush in the courtroom."

Appellant contends that he did not make a threat to commit any crime of violence. He asserts that his statement cannot be interpreted as a threat on its face. However, all of the witnesses testified that they took Appellant's statement as a threat. Additionally, Giardino stated that Appellant "bowed his chest out" towards Judge Nekhom when he made the statement.

Appellant argues that his statement was not a threat because the bailiff did not take any action to restrain him. However, Montgomery testified that after Appellant made the statement, he opened the door to the holding area and got Appellant "away from the Judge to stop any further escalation of any possible conflict." As such, Montgomery did take action to immediately separate Appellant from Judge Nekhom.

Viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the offense of terroristic threat beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The evidence is thus sufficient to support Appellant's conviction. Accordingly, we overrule Appellant's first and second issues.

9

**D.    Hindering Proceedings by Disorderly Conduct**

Appellant argues that the evidence is insufficient to support his conviction for hindering proceedings by disorderly conduct because his statement was not a disturbance.

Section 38.13 of the penal code provides that "[a] person commits an offense if he intentionally hinders an official proceeding by noise or violent or tumultuous behavior or disturbance." Tex. Penal Code Ann. § 38.13(a) (Vernon 2003). Official proceeding is defined as "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." Tex. Penal Code Ann. § 1.07(a)(33) (Vernon Supp. 2010). Additionally, the relevant definition of a "public servant" includes "an officer, employee, or agent of government." *Id.* § 1.07(a)(41)(A).

Judge Nekhom testified that after Appellant made the statement, she had to leave the courtroom to compose herself. She stated that it took several minutes before she went back into the courtroom. After Judge Nekhom returned to the courtroom, she resumed conducting court business.

Judge Nekhom stated that when she had to call Appellant to the bench to discuss his dispute with his attorney, other general court business was being conducted in the courtroom. She stated that the court clerk was processing plea paperwork, the court coordinator was working on passing cases and talking with

attorneys, and attorneys were waiting for Judge Nekhom to hear their clients' cases.

Appellant contends that his statement was not a disturbance. He points to Hinton's testimony that after the statement, it was "business as usual" to support his contention. However, as stated above, Judge Nekhom had to remove herself from the courtroom after the statement, which slowed down the court business.

Appellant further argues that because Carey had been removed as his attorney, "it is hard to imagine how he could have disrupted his own proceedings." He also points to the fact that the proceedings had been concluded and he was on his way to the holding cell when the statement was made to support his contention. However, there is nothing in the record to support Appellant's statement that Carey had been removed as his attorney at the time that Appellant made the statement. Additionally, even though Appellant was being escorted to the holding cell when he made the statement, there is nothing in the record to show that Judge Nekhom had stated that the proceedings had ended. In fact, the court reporter was still transcribing when Appellant made the statement.

Viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the offense of hindering proceedings by disorderly conduct beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at

11

778. The evidence is thus sufficient to support Appellant's conviction. We overrule Appellant's fourth and fifth issues.

## IV. FREE SPEECH PROTECTION

In his third and sixth issues, Appellant argues that sections 22.07 and 38.13 are unconstitutional as applied to him because the provisions violate his right to free speech under the First Amendment to the United States Constitution. Both issues revolve around Appellant's statement, "Let's do it, Nekhom. It's me and you now."

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature acted reasonably in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The person challenging the statute must prove its unconstitutionality. *Id.*

The First Amendment prohibits laws that abridge freedom of speech. U.S. Const. amend. I. The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech. *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 1547 (2003).

The protections afforded by the First Amendment, however, are not absolute, and courts have long recognized that the government may regulate certain categories of expression consistent with the Constitution. *Id.*; *Coggin v. State*, 123 S.W.3d 82, 87 (Tex. App.—Austin 2003, pet. ref'd). The First Amendment permits "restrictions upon the content of speech in a few limited

12

areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Black*, 538 U.S. at 358–59, 123 S. Ct. at 1547.

The First Amendment permits a State to ban a "true threat." *Id.* at 359, 123 S. Ct. at 1547; *Watts v. United States*, 394 U.S. 705, 708, 89 S. Ct. 1399, 1401 (1969). The Supreme Court in *Black* explained that:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

*Black*, 538 U.S. at 359–60, 123 S. Ct. at 1548 (internal citations omitted).

Here, Appellant's argument is essentially the same as his sufficiency argument above. Appellant argues that his statement was not a threat. Additionally, he asserts that his statement was not an "expression to kill or injure."

However, as explained above, the State met its burden to prove that Appellant threatened Judge Nekhom. Appellant made a threatening statement to Judge Nekhom, "bowed his chest out" towards Judge Nekhom, and had "aggressive body language." Appellant's argument that he was simply voicing

13

his "frustration" does not afford him protection under the First Amendment to threaten a trial court judge.  Accordingly, we hold that sections 22.07 and 38.13 of the penal code are not unconstitutional as applied to Appellant.  Thus, we overrule Appellant's third and sixth issues.

## V. CONCLUSION

Having overruled Appellant's six issues, we affirm the trial court's judgments.


BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

PUBLISH

DELIVERED:  October 14, 2010

14