

# NUMBER 13-10-462-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**OMAR RAMIREZ,**                                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                        **Appellee.**

---

### On appeal from County Court at Law No. 3
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Garza, Vela, and Perkes
### Memorandum Opinion by Justice Vela

Appellant, Omar Ramirez, was charged by information with the offense of terroristic threat against a public servant, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.07(a)(2), (c)(2) (Vernon Supp. 2010). After a jury found him guilty of the lesser-included offense of terroristic threat, a Class B misdemeanor, *see id.* § 22.07(a)(2),

(c), the trial court assessed punishment at sixty days' confinement in the county jail. By two issues, Ramirez challenges the legal sufficiency of the evidence to support his conviction, and he complains that he is entitled to a new trial. We affirm.

## I. FACTUAL BACKGROUND

### A. State's Evidence

Alfonso Mendiola, Jr., worked as a program monitor at Cornell Reality House, a residential re-entry center for federal offenders. On June 1, 2009, while driving on a frontage road in Brownsville, he saw a black vehicle following him. When he "came up" on a red light, he saw Omar Ramirez, a former resident at Cornell Reality House, get out of the black vehicle. Mendiola got out of his vehicle, and Ramirez approached him, stood about one foot from him, and pointed at him. Mendiola testified Ramirez yelled at him and "started telling me things, that he was going to hurt me, he was going to get me, that I was going to pay, things like that." When the prosecutor asked Mendiola if he remembered the exact words that Ramirez used, he said, "'You goddamn asshole, I'm going to beat the hell out of you, and you're going to pay for this. You owe me one.'" Even though Ramirez was "very volatile," Mendiola did not believe what he said. After Ramirez told Mendiola, "'My chick saved your life,'" Ramirez drove away. Mendiola testified that what Ramirez told him did not scare him "at that time."

Maria Mancha, Cornell Reality House's director, testified that Mendiola approached her "about a threat from Omar Ramirez." She was concerned that this was a serious threat and made sure that a complaint about the incident was filed.

2

Officer Carlos Olvera filed a police report on Mendiola's behalf concerning the incident in question. On cross-examination, when defense counsel asked Officer Olvera, "[I]sn't it true that in your report you wrote that the complainant [Mendiola] advised you that he never felt threatened?", he said, "If I recall correctly, yes." When defense counsel asked him, "Did he [Mendiola] say what was said to him?", he said, "He advised me the other party [Ramirez] had insulted him and called him names."

Detective Julian Ramirez spoke to Mendiola about the incident in question. He testified that Mendiola "advised that he had been threatened by a male subject, . . . ." He stated that Mendiola's desire was to file charges against Ramirez.

**B. Defense Evidence**

Abriel Jimenez testified she had been married to Ramirez for a year and two months and that they had "been together" for four to five years. She stated Ramirez is "an honest person. He works a lot, and he has never gotten in trouble since" she has known him. She was not present during the incident in question.

Ramirez testified he had pleaded guilty to "[p]ossession with intent to distribute." After serving three years in prison for this offense, he was released to Cornell Reality House for four and a half months. During that time, he became acquainted with Mendiola. When defense counsel asked him if he had "any real problems with Mr. Mendiola," he said, "[A]ll staff members, as in the way they would kind of treat clients, . . . kind of make them feel a little—belittle them a little bit, . . . kind of let that power get to them." He testified that on the day in question, "I turned on Alton Gloor to Frontage, . . . and he [Mendiola] caught up to me, . . . ." He stated that "Mendiola was beside me. . . .

3

And I seen him and he kind of gave me a smirk look and kind of just gave me the peace sign. So I just kind felt [sic] that as like [sic] mocking me, kind of laughing at me. . . . So I . . . [f]lipped him the bird . . . and drove past him. And that was just it."

On cross-examination, the prosecutor asked Ramirez about his behavior at Cornell Reality House. When the prosecutor asked him, "Did Mr. Mendiola ever write you up?", he said, "That I'm aware of, yes. One time he wrote me up for using the phone after 10:30."

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, Ramirez argues the evidence is legally insufficient to support his conviction.

#### 1. Standard of Review

"When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S 307, 318-19 (1979)) (emphasis in original). "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Id.* at 518. We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.

4

*Jackson*, 443 U.S. at 326.

Our review of a legal sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

### 2. Applicable Law

Section 22.07 defines the offense of terroristic threat. *See* Tex. Penal Code Ann. § 22.07. The relevant portion of section 22.07 provides that a "person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent serious bodily injury." *Id.* § 22.07(a)(2). In this case, the information alleged that Ramirez "did then and there threaten to commit an offense involving violence to A PERSON, namely, CAUSING BODILY INJURY, with intent to place ALFONSO MENDIOLA in fear of imminent serious bodily injury, . . . ." (emphasis in original).

In *Walker v. State*, the Fort Worth Court of Appeals stated:

> Therefore, in order to commit this offense [terroristic threat] the accused must have the specific intent to place any person in fear of imminent serious bodily injury. . . . Intent can be inferred from the acts, words, and conduct of the accused. However, the accused's intent cannot be determined merely from what the victim thought at the time of the offense. Indeed, for this offense to be complete it is not necessary that the

victim or anyone else was actually placed in fear of imminent serious bodily injury. Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. All that is necessary to complete the offense is that the accused by his threat sought as a desired reaction to place a person in fear of imminent serious bodily injury.

327 S.W.3d 790, 794 (Tex. App.–Fort Worth 2010, no pet.) (quoting *Dues v. State*, 634 S.W.2d 304, 305-06 (Tex. Crim. App. 1982)) (internal citations omitted).

### 3. Analysis Of Sufficiency Challenge

Ramirez contends "the alleged threat, even if it was a threat, was never imminent, and the evidence failed to show the threat was imminent. . . ." The court of criminal appeals has defined "imminent" to mean "'near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'" *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (citing BLACK'S LAW DICTIONARY 676 (5th ed. 1979)).

The evidence showed that Ramirez approached Mendiola at a red light, stood about one foot from him, and pointed at him. He called Mendiola an obscene name and told him, "I'm going to beat the hell out of you, and you're going to pay for this." While saying this, he yelled at Mendiola and was "very volatile." Based upon Ramirez's words, body language, and tone of voice, a rational jury could reasonably conclude that Ramirez's statement, "I'm going to beat the hell out of you," constituted a threat of physical injury against Mendiola. Furthermore, a rational jury could reasonably conclude the threat was imminent. *See Walker*, 327 S.W.3d at 795 (evidence to support terroristic-threat conviction held sufficient when defendant, while being escorted to a holding cell, stopped about five feet from Judge Nekhom, turned toward her, "bowed his

6

chest out," stared at her, and said, "'Let's do it, Nekhom.   It's me and you now.'").

Even though Mendiola testified he did not feel threatened by Ramirez and did not believe Ramirez when he told him what he was going to do to him, "it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury." *Id.* at 794.   Nevertheless, we note that Maria Mancha testified Mendiola approached her "about a threat from Omar Ramirez."   And, Detective Ramirez, who investigated the incident, testified Mendiola "advised that he had been threatened by a male subject, . . . ."

Although Ramirez testified he only "flipped the bird" at Mendiola, the jury "is free to believe or disbelieve the testimony of any witness, to reconcile conflicts in the testimony, and to accept or reject any or all of the evidence of either side."   *Bottenfield v. State*, 77 S.W.3d 349, 355 (Tex. App.–Fort Worth 2002, pet. ref'd).   Thus, the jury was free to reject Ramirez's testimony and accept Mendiola's version of the events.

Viewing all the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the offense of terroristic threat beyond a reasonable doubt.   *See Jackson*, 443 U.S. at 319.   The evidence is thus legally sufficient to support the conviction.   Issue one is overruled.

**B. Entitlement to a New Trial**

In issue two, Ramirez contends he is entitled to a new trial because the trial court denied counsel's motion in limine in which counsel argued that the prosecutor should be prevented from referring to the alleged victim as a public servant during voir dire examination.

**1. Background**

Prior to the start of voir dire examination, defense counsel argued, as part of her motion in limine, that Mendiola was not a public servant. However, the trial court refused to rule that he was not a public servant. In the motion for new trial, defense counsel alleged that after the jury began deliberating on guilt-innocence, the jury sent out a note, stating that it was confused about the definition of "public servant" and requested an additional definition. After considering the jury's request, the trial court decided that Mendiola was not a public servant and instructed the jury to proceed on the lesser-included offense of terroristic threat.

At the hearing on the motion for new trial, defense counsel argued as follows:

> The reason we requested the new trial, Your Honor, was because of the facts stemming from the public servant definition was misinterpreted. The fact that the jury came back saying they still did not understand the definition of public servant, and that was when you decided that he [Mendiola] never qualified in the first place as a public servant. At that time I asked for a mistrial. The State did not want a mistrial, and you were not inclined at the time to grant the mistrial. Therefore, you withdrew—you decided on your own to withdraw the original charge of terroristic threat on a public servant and have the jury only consider the lesser included offense of terroristic threat. And that's the reason we filed a motion for new trial, Your Honor.

After hearing argument from both sides, the trial court denied the motion for new trial.

**2. Preservation of Error**

Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error, and states, in part:

> (a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

8

(1) the complaint was made to the trial court by a timely request, objection, or motion that:
(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; . . . .

TEX. R. APP. P. 33.1.

This rule encompasses the concept of "party responsibility." *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005). In other words, "[t]he complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Id.* at 177. "To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). This method gives the trial court and the opposing party a chance to correct the error. *Id.* "Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial. In making this determination, we consider the context in which the complaint was made and the parties' shared understanding at that time." *Id.* (footnote omitted).

Here, defense counsel did not object during voir dire, and did not complain, either in the motion for new trial or at the hearing thereon, that the prosecutor improperly referred to Mendiola as a public servant during voir dire examination. Thus, Ramirez did not clearly convey to the trial court the particular complaint, including the precise and

9

proper application of the law as well as the underlying rationale. See *Reyna*, 168 S.W.3d at 177. Furthermore, we point out that a motion in limine "is a preliminary matter and normally preserves nothing for appellate review." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). We hold that the issue is not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A). Issue two is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of April, 2011.