

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00204-CR

---

**BARRY ALAN BOES II, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 22nd District Court
Hays County, Texas
Trial Court No. CR-20-1625-A, Honorable Bruce Boyer, Presiding

---

August 15, 2023

## OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

By this appeal we are presented with a case of first impression to determine, among other things, whether "tagging" someone on Facebook, in today's world of social media, constitutes an intentional or knowing act of "communication." We hold it does.

Following a plea of not guilty, Appellant, Barry Alan Boes II, was convicted by a jury of violation of a protective order,[1] enhanced. The trial court imposed a sentence of

---

[1] TEX. PENAL CODE ANN. § 25.072.

five years and assessed a $10,000 fine, suspended in favor of five years' community supervision. By four issues, he maintains (1) a juror committed misconduct by failing to disclose her bias that a defendant is guilty if he does not testify, (2) a lay witness was permitted to give opinion testimony that tagging constitutes communication and he acted intentionally, (3) the evidence is insufficient to support his conviction, and (4) his Facebook posts constitute free speech which the government had no authority to criminalize.[2] We affirm.

## BACKGROUND

Appellant and his estranged wife, Dr. Sheila Boes, married in 1992 and divorced in 2021. In February 2020, the parties engaged in an altercation which resulted in divorce proceedings. Appellant was arrested for assault family violence. Following his arrest, a deputy, on behalf of Dr. Boes, applied to a magistrate for an emergency protective order against Appellant pursuant to article 17.292 of the Texas Code of Criminal Procedure.[3] The deputy testified he applied for the order "to prevent any acts of further family violence . . . ." Among other conduct, the order prohibited Appellant from the following:

> communicating directly with a family member of the family or household or with the person(s) protected under the Order in a threatening or harassing manner;

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] Article 17.292 of the Texas Code of Criminal Procedure provides, in relevant part, that a magistrate may prohibit the arrested party from communicating "*in any manner* with a person protected under the order" "if the magistrate finds good cause." TEX. CODE CRIM. PROC. ANN. art. 17.292(c)(2)(C). (Emphasis added).

2

communicating a threat through any person to a member of the family or household or to the person(s) protected under the Order;

*communicating in any manner* with a person protected under the Order or a member of the family or household of a person protected under the Order, accept through the party's attorney or a person appointed by the court, because the Court finds good cause exists; and

going to or within 500 feet of the residence of the victim.

(Emphasis added).

The order was signed on February 5, 2020. In March 2020, Appellant posted on Facebook on at least three occasions and "tagged" Dr. Boes. No concerns were expressed regarding the first few posts; however, after a subsequent post, Dr. Boes's divorce attorney notified law enforcement that Appellant had been communicating with Dr. Boes by tagging her on Facebook. The posts were not threatening but Dr. Boes testified they embarrassed her.

The case was assigned to Detective Terreo on April 1, 2020. He reviewed the family violence case and the complained-of posts. He also conducted a phone interview with Appellant to discuss tagging Dr. Boes. The recorded interview was admitted into evidence. Ultimately, Appellant was convicted of violating the emergency protective order by intentionally and knowingly communicating with Dr. Boes.

Following his conviction, he filed an application, which the trial court granted, for juror information and requesting the jurors complete a survey. One of the survey questions was as follows: "What was the key piece of evidence or the deciding factor that convinced the other jurors to vote the way they did?" Juror Rodgers responded, "The defendant did not testify." She swore an affidavit averring as follows: "I believed Mr. Boes

3

was guilty because he did not testify. I based that belief on the television show Law and Order because on that show, the defendant is guilty when he does not testify."

Appellant filed a motion for new trial alleging, among other grounds, juror Rodgers's belief constituted jury misconduct. The motion was overruled by operation of law.

We address Appellant's issues in a logical rather than sequential order and begin with issue three by which he challenges the sufficiency of the evidence because if sustained, it would afford him the greatest relief possible. *See Bradleys' Elec. v. Cigna Lloyds Ins. Co.,* 995 S.W.2d 675, 677 (Tex. 1999) ("Generally, when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those points that would afford the party the greatest relief."). *See also* TEX. R. APP. P. 43.3.

## ISSUE THREE—SUFFICIENCY OF THE EVIDENCE

The State was required to prove Appellant, during a period twelve months or less in duration, two or more times engaged in conduct which constituted an offense under section 25.07. TEX. PENAL CODE ANN. § 25.072(a). As relevant here, the statute criminalizes violations of an order in a family violence case issued pursuant to article 17.292 of the Texas Code of Criminal Procedure if the person knowingly or intentionally communicates "in any manner with the protected individual or a member of the family or household" except through the person's attorney or a person appointed by the court. § 25.07(a)(2)(C).

4

The only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

We compare the elements of the offense as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial and whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326.

ANALYSIS

The State showed Appellant tagged Dr. Boes at least three times in March 2020, just one month after issuance of the protective order. Thus, the State satisfied the statutory requirement to show Appellant, at least twice in a twelve-month period, engaged in conduct which allegedly violated the protective order. The crucial inquiry to resolve is whether those Facebook tags constitute "communications" in violation of the protective order. We hold under the facts presented herein they do.[4]

"Communication" is not defined in any of the statutes applicable here. When a word in a statute is not defined, it is ordinarily given its plain meaning unless the statute clearly shows the word is used in some other sense. *See Gonzalez v. State*, 954 S.W.2d 98, 103 (Tex. App.—San Antonio 1997, no pet.). *See also* TEX. GOV'T CODE ANN. § 311.011(a) (providing words and phrases shall be read in context and construed according to the rules of grammar and common usage). "Communication" is defined as "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior"; an "exchange of information"; "information communicated"; "information transmitted or conveyed"; a verbal or written message." *See* merriam-webster.com/dictionary/communication.

The evidence showed neither Appellant nor Dr. Boes had "unfriended" each other. Detective Terreo sponsored State's Exhibit 8, an illustration of Facebook's Help Center.

---

[4] The parties have not directed this Court to any authority specifically addressing the issue and we have found none.

It provides an explanation of "tagging" as creating a link to a particular Facebook friend who must be selected to receive notification of a tag.

During the interview with Appellant, Detective Terreo informed him he had violated the protective order and was going to be arrested. Appellant, caught by surprise at the news, told the detective he had not intended to communicate or contact Dr. Boes through his posts. He claimed not to know the specifics of tagging. But he acknowledged every post on his Facebook page could be viewed in the timelines of his Facebook friends. After Detective Terreo explained his understanding of the process of tagging, Appellant acquiesced his postings could have been interpreted as being directed toward Dr. Boes. During cross-examination, Detective Terreo testified, without objection, he did not find Appellant's denial of communicating through Facebook tagging credible. Dr. Boes testified, without objection, she believed the posts were communications and as noted earlier—intended to embarrass and shame her. The posts admitted into evidence demonstrate Appellant's transmission or conveyance of information or a written message sufficient to constitute "communications." Conflicts in the evidence, if any, were ultimately resolved against Appellant and we must defer to the jury's resolution of those conflicts in favor of the prosecution.[5] We find the evidence was sufficient to support Appellant's conviction for violation of a protective order.[6] Issue three is overruled.

---

[5] We are not unmindful of the jury's difficulty in reaching its verdict which is reflected in a lengthy note to the trial court during deliberations. The jury asked if tagging is a communication; whether posting is enough to be considered a communication or is tagging an element of communication; "the documents don't match 'by tagging' versus 'any communication'"; and did tagging violate the protective order?

[6] By his motion for new trial, Appellant challenged the sufficiency of the evidence and included as an exhibit a report from a licensed private investigator who had experience as a computer forensic specialist. He concluded there was no evidence to show Appellant's Facebook posts were an intent to communicate with Dr. Boes.

7

**ISSUE ONE—JUROR MISCONDUCT**

Appellant maintains he was entitled to a new trial based on Juror Rodgers's bias that his failure to testify indicated his guilt which she based on the television show "Law and Order." We disagree.

As previously mentioned, jurors were asked, "[w]hat was the key piece of evidence or the deciding factor that convinced the other jurors to vote the way they did?" Juror Rodgers answered, "[t]he defendant did not testify[.]" When the investigator asked whether she knew if anyone else felt that way, she answered, "I didn't talk to anybody about it."

Appellant raised juror misconduct in his motion for new trial and invoked Rule 21.3(g) of the Texas Rules of Appellate Procedure to claim he did not receive a fair and impartial trial. He maintained he was not inquiring into the validity of the verdict; rather, he alleged Juror Rodgers committed misconduct at the inception of the trial by not revealing her belief a defendant is guilty if he does not testify. He claims she violated her oath as a juror and violated the trial court's instructions.

At the hearing on the motion, Appellant argued the jury panel had been given at least three opportunities (voir dire, defense counsel's opening comments, and in the court's instructions and charge) to express any concerns regarding his Fifth Amendment right not to testify and Juror Rodgers remained silent on her bias. The State argued Appellant's evidence in the form of affidavits was inadmissible under Rule 606(b) of the Texas Rules of Evidence.

8

We review the denial of a motion for new trial for abuse of discretion. *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021); *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). An appellant bears the burden of proving the allegation of juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

We acknowledge, as did the trial court, the seriousness of Juror Rodgers's reliance on a television show.[7] However, inquiry into a jury's deliberative process is prohibited. TEX. R. EVID. 606(b)(1) (referred to as the "no-impeachment rule"). The only exceptions are if an outside influence was improperly brought to bear on any juror or to rebut a claim a juror was not qualified to serve. TEX. R. EVID. 606(b)(2). An outside influence inquiry is limited to what occurs outside of the jury room and outside of the juror's personal knowledge and experience. *McQuarrie*, 380 S.W.3d at 153.

The United States Supreme Court has held the "no-impeachment rule" must give way to the prohibition against consideration of juror affidavits to permit a trial court to consider evidence of a juror's racial bias and any denial of the jury trial guarantee. *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 225, 137 S. Ct. 855, 197 L. Ed. 2d 107 (2017). The Third Court of Appeals considered application of *Pena-Rodriguez* in *Sanchez v. State*, No. 03-19-00437-CR, 2021 Tex. App. LEXIS 5194, at *2 (Tex. App.—Austin June 30, 2021, no pet.) (mem. op) (not designated for publication). In *Sanchez*, the defendant was

---

[7] At the hearing, defense counsel referred to Juror Rodgers's conduct as "egregious" "on its face." The court responded, "[o]n its face, it probably is. And I can make that comment as far as his Constitutional rights are concerned. The question is procedural issues as to whether or not this evidence is admissible or not." As arguments continued, the court added, "[b]ut I also can't ignore the fact that this is a very serious matter . . . ."

convicted of aggravated sexual assault of a child after the jury was given an *Allen* charge.[8] A post-verdict investigation revealed allegations of juror misconduct with racial tones. Several jurors testified at a hearing on a motion for new trial. The testimony exposed allegations of a juror lipreading conversations between defense counsel and the judge, defendant "smirking" at times, and a comment by one juror on his ability to speak English while using a translator. Testimony revealed some jurors discussed the bench conferences and lipreading while they were on break. *Id.* at *7. The Third Court of Appeals noted the alleged juror misconduct referencing use of a translator "was nothing more than 'anomalous behavior by a single' juror." The appellant had not met the high standard of *Pena-Rodriguez* to pierce the "no-impeachment rule" and allow the trial court to consider the evidence presented at the hearing on the motion for new trial. *Id.* at *10–12.

Here, Juror Rodgers's belief that Appellant's failure to testify indicated his guilt was not discussed with any other jurors. There is nothing in the record to show whether her guilty vote was based on her perception of a television show or on the evidence presented. Appellant has not shown an outside influence came to bear on any of the jurors sufficient to pierce the no-impeachment rule. *See Colyer v. State*, 428 S.W.3d 117, 124–25 (Tex. Crim. App. 2014). *See also Cruz-Garcia v. State*, No. AP-77,025, 2015 Tex. Crim. App. Unpub. LEXIS 821, at *81–82 (Tex. Crim. App. Oct. 28, 2015) (holding Bible readings by the foreman during deliberations were not an outside influence). We

---

[8] An *Allen* charge is given to a jury which is deadlocked. *Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

cannot say the trial court abused its discretion in finding Juror Rodgers's affidavit inadmissible under Rule 606(b)(1).  Issue one is overruled.

**ISSUE TWO—ADMISSION OF LAY OPINION ON "TAGGING" AND CULPABLE MENTAL STATE**

Appellant asserts the trial court erroneously allowed Detective Terreo, a lay witness, to testify that "tagging" on Facebook constitutes a "communication" which resulted in violation of the emergency protective order.  The testimony, he contends, was an opinion on his guilt or innocence.

The State argues Appellant waived his complaint by not making a specific objection that Detective Terreo gave an opinion as a lay witness on "tagging."  We agree with the State.

Preservation of error is systemic on appeal.  *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016).  If an issue is not preserved for review, an appellate court should not consider it.  *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).  To properly preserve an issue concerning the admission of lay witness opinion testimony for appeal, a party must make a timely request, objection, or motion specifying the grounds for the ruling sought.  *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103(a)(1).  *See also Mosley v. State*, 666 S.W.3d 670, 675–76 (Tex. Crim. App. 2023).  Additionally, an issue on appeal must comport with the objection made at trial.  *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

Here, during Detective Terreo's testimony regarding how the tagging feature on Facebook operates, Appellant made a hearsay objection followed by "[o]ther than that, no other objections."  His complaint on appeal that Detective Terreo was allowed to offer

11

expert testimony as a lay witness does not comport with his trial court objection. *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017). Consequently, Appellant has not preserved his issue for our consideration. Issue two is overruled.

ISSUE FOUR—FACEBOOK POSTS AND FREE SPEECH

Appellant asserts section 25.072 of the Penal Code, which criminalizes repeated violations of protective orders, is unconstitutionally overbroad as applied to his non-offensive posts on Facebook, a public forum.[9] We disagree.

The First Amendment's guarantee of free speech generally protects the free communication and receipt of ideas, opinions, and information.[10] *See Scott v. State*, 322 S.W.3d 662, 668 (Tex. Crim. App. 2010), *overruled in part on other grounds*, *Wilson v. State,* 448 S.W.3d 418 (Tex. Crim. App. 2014). The protections afforded by the First Amendment, however, are not absolute, and courts have long recognized the government may nevertheless regulate certain categories of expression. *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); *Walker v. State*, 327 S.W.3d 790, 796 (Tex. App.—Fort Worth 2010, no pet.). The First Amendment thus permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *See Black*, 538 U.S. at 358–59.

---

[9] Appellant raised this argument in his motion to quash the indictment.

[10] In *Counterman v. Colorado*, No. 22-138, 600 U.S. __ (2023), which involved thousands of Facebook posts, the Court vacated a stalking conviction and held that in "true threat" cases, the State must prove the defendant had some subjective understanding of the threatening nature of his statements but the First Amendment requires no more demanding a showing than recklessness.

*See also Walker*, 327 S.W.3d at 796 (concluding threats of violence are outside First Amendment protection); *Garcia v. State*, 583 S.W.3d 170, 175 (Tex. App.—Dallas 2018, pet. ref'd) (discussing whether Facebook posts constituted "true threats" which are not entitled to First Amendment protection).

A challenge to a statute as overbroad is "strong medicine" to be employed with hesitation and only as a last resort. *Ex parte Thompson*, 442 S.W.3d 325, 349 (Tex. Crim. App. 2014). The overbreadth doctrine prohibits the government from "banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002).

In *Wagner v. State*, 539 S.W.3d 298, 310–11 (Tex. Crim. App. 2018), the Court addressed a similar overbreadth challenge to section 25.07(a)(2)(A) of the Penal Code, which criminalizes communication in a harassing manner. *Id.* at 308. The Court found the statute was not overbroad and did not violate the First Amendment. *Id.* at 309–10. The statute did not reach a substantial amount of constitutionally protected conduct judged in relation to its plainly legitimate sweep. *Id.* at 310. The statute, the same one challenged here, applies only in a very limited set of circumstances to family violence or other abusers whose communications with a protected person have been judicially restricted. *Id.* The Court noted the protective orders are imposed only for a limited duration which weighs heavily against a claim of First Amendment infringement. *Id.* at 311.

13

In the underlying case, the protective order resulted from an arrest for domestic violence. Although we do not find Appellant's posts constitute "true threats," because we have held tagging on Facebook constitutes a "communication," Appellant violated the emergency protective order prohibiting communication "in any manner." Because section 25.072 applies under very limited circumstances in family violence cases and protective orders issued pursuant thereto are limited in duration, we conclude the statute is not overly broad and Appellant's Facebook posts are not entitled to First Amendment protection. Issue four is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Publish.