Ex parte William Michael BOETSCHER.

No. 272–90.

Court of Criminal Appeals of Texas,
En Banc.

June 26, 1991.

David A. Schulman, Lubbock, for appellant.

Travis S. Ware, Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appellant William Michael Boetscher, a resident of Michigan, was indicted by the Lubbock County, Texas, grand jury for felony nonsupport of his two minor children. Tex.Penal Code § 25.05(a), (f), & (g)(2).[1] He was subsequently extradited to Texas. Tex.Crim.Proc.Code art. 51.13, §§ 6 & 22; Tex.Fam.Code § 21.05. Once in Texas, appellant sought a writ of habeas corpus on the grounds (1) Texas lacks jurisdiction to try him for the charged offense and (2) the penal code section under which he was charged is, in part, violative of his federal constitutional right to equal protection of the laws. The trial court denied relief, and the Seventh Court of Appeals affirmed. *Boetscher v. State,* 782 S.W.2d 954 (Tex. App.—Amarillo 1990). We granted appellant's petition for discretionary review, pursuant to Tex.R.App.Proc. 200(c)(3), in order to consider his jurisdictional and constitutional arguments.[2] We will reverse.

---

1. Texas Penal Code § 25.05 provides in relevant part:

   (a) An individual commits an offense if he intentionally or knowingly fails to provide support for his child younger than 18 years of age, or for his child who is the subject of a court order requiring the individual to support the child.

   \*   \*   \*   \*   \*   \*

   (f) Except as provided in Subsection (g) of this section, an offense under this section is a Class A misdemeanor.

   (g) An offense under this section is a felony of the third degree if the actor:

   \*   \*   \*   \*   \*   \*

   (2) commits the offense while residing in another state.

2. We have previously entertained pretrial habeas corpus proceedings challenging the constitutionality of penal statutes. *See Ex parte Crisp,* 661 S.W.2d 944 (Tex.Cr.App.1983); *Ex parte Psaroudis,* 508 S.W.2d 390 (Tex.Cr.App.1974).

In June 1977 appellant divorced Patricia Boetscher in Wayne County, Michigan, where the two had apparently resided during their marriage. Soon after the divorce, Patricia and the couple's two minor children moved to Lubbock County. In September 1988 the Lubbock County grand jury indicted appellant for felony nonsupport of the children. The indictment alleges in relevant part that appellant,

> on or about [the] 1st day of March 1988, [in Lubbock County], did then and there intentionally and knowingly fail to provide support, that the defendant could have provided and that the defendant was legally obligated to provide for [his two daughters], who [were] then and there ... under the age of 18 years, and the defendant was then residing in another state, to-wit: Michigan.

Thus, appellant is charged with criminal nonsupport of his minor children, who reside in Texas, although appellant himself has apparently never resided in Texas.

We consider first the question of jurisdiction. In his petition for discretionary review, appellant, citing *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1980), argues that the Fourteenth Amendment due process clause prohibits the State from asserting criminal jurisdiction over him. He argues that, consistent with due process, a state may not exercise criminal jurisdiction over a defendant unless that defendant has some purposeful connection to that state, and that his own connection with this state was not purposeful.

The court of appeals dismissed appellant's argument with the conclusory statement that "*Kulko* is a civil case ... and the concept of minimum contacts as explicated therein has no application in a criminal case." *Boetscher* at 956.

In *Kulko*, a civil suit was commenced in California by a California resident against her former husband, a New York resident, to obtain an increase in the defendant's child support obligations. The defendant had no discernible contacts with California, with the single exception that he had allowed his daughter to go there to live with the plaintiff. On these facts, the Supreme Court held, due process precluded subjecting the defendant to civil jurisdiction in California. The Court first reiterated an earlier holding that, for there to be civil jurisdiction consistent with due process, "it is essential ... that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state." *Kulko* at 94, 98 S.Ct. at 1698 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The Court then went on to explain that only when a defendant has done such a purposeful act *should he reasonably anticipate being subject to, and thus may fairly be required to submit to, the civil jurisdiction of the forum state.* See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–478, 105 S.Ct. 2174, 2181–2185, 85 L.Ed.2d 528 (1985). The Court in *Kulko* then reasoned that the defendant was not subject to California's civil jurisdiction because his connection to that state was not the result of his own purposeful act, but rather that of his ex-wife and daughter.

■ We have found no case law from any jurisdiction applying a *Kulko*-type minimum contacts analysis to criminal jurisdiction. See Brilmayer, *An Introduction to Jurisdiction in the American Federal System* 329–335 (1986) (discussing minimum contacts theory and criminal jurisdiction). Furthermore, there is no necessity in *this* case for us to answer the difficult question posed by appellant's argument, i.e., whether, for there to be criminal jurisdiction over a defendant in any particular state, due process *always* requires some behavior by that defendant by which he should reasonably anticipate being subject to that state's criminal jurisdiction. See Rotenberg, *Extraterritorial Legislative Jurisdiction and the State Criminal Law*, 38 Texas L.Rev. 763, 784–787 (1960) (suggesting due process has such a requirement). Assuming arguendo that due process does require such foreseeability, as it does in civil suits, we have no difficulty

concluding that the requirement was met in this case.[3]

Failure to support one's minor children is a criminal offense in Michigan, just as it is in Texas, and Michigan's criminal non-support statute on its face does not limit its reach to resident offenders. *See* Mich.Penal Code § 750.161. And we must presume appellant was aware of Michigan law. Therefore, if appellant, as alleged in the indictment, intentionally or knowingly failed to support his minor children, whom he knew lived in Texas, then he should have reasonably anticipated that Texas law regarding nonsupport might be similar to Michigan law and that it (i.e., Texas law) might reach his conduct. Appellant's first ground for review is overruled.

■ The question remaining for our determination is whether the felony penalty provision of § 25.05(g)(2) violates appellant's Fourteenth Amendment right to the equal protection of this state's laws. Appellant argues that § 25.05(g)(2), as applied to the unusual circumstances of his case, denies him equal protection because it makes his alleged conduct a felony, rather than a misdemeanor, "solely because he is not a resident of Texas." The State argues in response that § 25.05(g)(2) is reasonable, and therefore supposedly constitutional, because it addresses "the problem of extradition, which is greatly facilitated ... by the classification of the offense as a felony rather than a misdemeanor."

The court of appeals concluded the statutory classification of residents and nonresidents is "rational" because "[t]he legislature could have concluded that the parental

support obligation is more difficult to enforce if the parent charged with nonsupport ... is a nonresident." *Boetscher* at 960.[4]

Section 25.05, effective in 1974, provides a misdemeanor penalty for anyone convicted of intentionally or knowingly failing to provide support for his minor children. This provision carries forward the misdemeanor penalty contained in our prior criminal nonsupport statute. *See* 1959 Tex. Gen.Laws 504, ch. 222, § 1. Unlike the previous statute, however, which increased the punishment to a felony for defendants who committed the offense in Texas *and then fled the state*, § 25.05(g)(2) provides a felony penalty for all defendants *who commit the offense while simply residing in another state*. The previous punishment classification scheme did not offend the equal protection clause, *see Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981), but the classification scheme in § 25.05 plainly implicates one of the basic rights of all Americans.

■ The United States Constitution guarantees the right to travel to, and reside in, any part of our national homeland.[5] *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 901–902, 106 S.Ct. 2317, 2319–2320, 90 L.Ed.2d 899 (1986) (plurality opinion); *Dunn v. Blumstein*, 405 U.S. 330, 338, 92 S.Ct. 995, 1001, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 629–631, 89 S.Ct. 1322, 1328–1329, 22 L.Ed.2d 600 (1969). Because of the fundamental importance to our citizens of this right to choice of residence, any governmental classification that penalizes its exer-

3. If constitutional due process requirements are satisfied, then there is no question that Texas has criminal jurisdiction over appellant, because his alleged behavior plainly falls within the ambit of Tex. Penal Code § 1.04(c), which provides: "An offense based on an omission to perform a duty imposed on an actor by a statute of this state is committed inside this state regardless of the location of the actor at the time of the offense." *See also Roberts v. State,* 619 S.W.2d 161 (Tex.Cr.App.1981); 2 LaFave & Israel, *Criminal Procedure* § 16.2(c) at 348 (1984) and cases cited therein (concluding that offense of nonsupport of the family is committed where the family lives).

4. The court of appeals concluded also that "the question here does not involve the fundamental right to interstate travel. We reiterate, the question here is disparate treatment of residents and nonresidents." *Boetscher* at 959. Thus, the court of appeals failed to recognize that the right to travel includes within it the right to *reside* in whatever state one wishes.

5. The precise textual source of this federal constitutional right "has proved elusive." *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 902, 106 S.Ct. 2317, 2320, 90 L.Ed.2d 899 (1986) (plurality opinion).

cise is presumed invalid under the equal protection clause of the Fourteenth Amendment. Such a classification will be upheld only if the government can show it is truly *necessary* to the promotion of a *compelling* governmental interest. *Soto–Lopez* 476 U.S. at 904, 106 S.Ct. at 2321; *Dunn* 405 U.S. at 339, 92 S.Ct. at 1001; *Shapiro* 394 U.S. at 634, 89 S.Ct. at 1331.

In the case of *In re King*, 3 Cal.3d 226, 90 Cal.Rptr. 15, 474 P.2d 983 (1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2249, 29 L.Ed.2d 709 (1971), the California Supreme Court addressed the validity of a statute similar to the one before us today. The penal code section under review in that case, Cal.Penal Code § 270,

> distinguishes between two "categories" or "classifications" of nonsupporting fathers—(1) those nonsupporting fathers who "remain out of the state" for 30 days and (2) those who do not—and the section singles out those falling within the former classification for more severe punishment. Thus, ..., any father who "remains out of the state" of California for 30 days while not supporting his child is guilty of a felony; a father who commits the identical act of criminal nonfeasance, but happens to be within California, is guilty only of a misdemeanor.

*King*, 90 Cal.Rptr. at 19, 474 P.2d at 987. After discussing the federal constitutional right to travel, the court unanimously held the statutory classification invalid because it "deposit[ed] additional criminal liability on an individual *solely* because he cho[se] to remain outside the state," *King*, 90 Cal. Rptr. at 21, 474 P.2d at 989 (emphasis in original), and was not shown to be necessary to the furtherance of a compelling governmental interest.

Like the classification held invalid in *King*, § 25.05(g)(2) singles out, for increased punishment, all defendants who simply exercise their federal constitutional right to reside where they choose, including those who never entered this state. As applied to appellant, § 25.05(g)(2) is valid, then, only if it is necessary to the promotion of a compelling governmental interest.

As noted before, the State argues only that the classification is reasonable because it facilitates extradition. While we accept that extradition of nonresident nonsupport offenders is a legitimate, even compelling, state interest and that legislators could rationally conclude that classifying such offenders as felons might make it *easier* to extradite them from foreign jurisdictions, that does not resolve the constitutional issue before us. For the application of the felony penalty provision to appellant to be constitutional under the equal protection clause, the State must meet its burden of *proving*, not simply arguing, that the classification is, as a practical matter, *necessary* for the extradition of nonsupport offenders to occur.[6] Such proof has not been made, or even attempted, in this cause.[7] We hold, therefore, that the equal protection clause of the Fourteenth Amendment prohibits the application of § 25.05(g)(2) to appellant under this indictment.[8] Appellant's second ground for review is sustained.

The judgment of the court of appeals is reversed and the indictment ordered dismissed.

MILLER, BAIRD and BENAVIDES, JJ., concur in result.

WHITE, J., dissents.

---

**6.** The State's burden would be met if it could prove that extradition of misdemeanants rarely occurs in practice even though it is possible in theory.

**7.** In future prosecutions under § 25.05(g)(2), the State may well be able to make such proof.

**8.** We are not called upon to express an opinion as to whether § 25.05(g)(2), as presently drafted, may be used to increase the penalty of nonsupport offenders who commit the offense in this state and then flee. *See Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981).