PD-1291-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/2/2015 6:54:40 PM
Accepted 11/3/2015 2:23:35 PM
ABEL ACOSTA
CLERK

NO. PD-1291-15

# IN THE COURT OF CRIMINAL APPEALS
# FOR THE STATE OF TEXAS

## EX PARTE JUSTIN CARTER
### *Appellant,*

## ON APPEAL FROM THE THIRD COURT OF APPEALS, AUSTIN
## No. 03-14-00669-CR

## PETITION FOR DISCRETIONARY REVIEW
(Oral Argument Requested)

Chad P. Van Brunt
State Bar No. 24070784
310 S. ST. MARY'S STREET
SUITE 1840 – TOWER LIFE BLDG.
SAN ANTONIO, TEXAS 78205
 (210) 399 – 8669
(210) 568 – 4927 (TELECOPIER)

Donald H. Flanary, III.
State Bar No. 24045877
310 S. ST. MARY'S STREET
29th Floor – Tower Life Bldg.
San Antonio, Texas 78205
(210) 226 – 1463
Attorneys for Justin Carter

FILED IN
COURT OF CRIMINAL APPEALS

November 3, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF THE PARTIES AND COUNSEL

Presiding Judge:

The Honorable Jack Robison
District Judge of the 207th Judicial District
New Braunfels, Texas


Attorneys for Appellant at trial court:

Donald H. Flanary, III.
GOLDSTEIN, GOLDSTEIN, & HILLEY
310 S. St. Mary's St.
29th Floor – Tower Life Bldg.
San Antonio, Texas 78205
(210) 226 – 1463

Chad P. Van Brunt
LAW OFFICE OF CHAD VAN BRUNT
310 S. St. Mary's St.
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
(210) 399 – 8669


Attorneys for Appellee at trial:

Chari L. Kelly
Assistant District Attorney
COMAL COUNTY DISTRICT ATTORNEY'S OFFICE
150 N. Seguin, Suite 307
New Braunfels, Texas 78130
(830) 221-1300

Intermediate Appellate Court:

Third Court of Appeals, Austin, Texas

Appellate Counsel for Justin Carter:

Chad P. Van Brunt, Donald H. Flanary, III.,

Appellate Counsel for State of Texas:

Chari L. Kelly

# TABLE OF CONTENTS

Identities of Parties and Counsel......................................................................... i

Table of Contents ............................................................................................ iii

Index of Authorities ........................................................................................ iv

Statement Regarding Oral Argument ................................................................ 1

Statement of the Case........................................................................................ 1

Statement of Procedural History ...................................................................... 2

Grounds for Review .......................................................................................... 2

Argument........................................................................................................... 2

    A. Summary of the Argument .................................................................... 2

    B. Reasons for Review............................................................................... 3

Certificate of Service ...................................................................................... 10

Certificate of Compliance ............................................................................... 10

# INDEX OF AUTHORITIES

## Cases

*Baumgartner v. United States*, 322 U.S. 665 (1944) ...................................8
*Cohen v. California*, 403 U.S. 15 (1971)......................................................6,8
*Ex Parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991) .................4,5
*Ex parte Carter*, 2015 Tex. App. LEXIS 9241 (Tex. App.—Austin 2015)...
......................................................................................................*passim.*
*Ex parte Watkins*, 73 S.W.3d 264, 273 (Tex. Crim. App. 2002)...............4,5
*New York Times v. Sullivan*, 376 U.S. 254 (1964). ....................................7
*United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803 (2000) .................6
*Weise v. State*, 55 S.W.3d 617 (Tex. Crim. App. 2001).....................*passim.*

## Constitutional Provisions, Statutes, and Rules

U.S. CONST. Amend. 1 ................................................................................ 1
U.S. CONST. Amend. 5 ................................................................................ 1
U.S. CONST. Amend. 14 .............................................................................. 1
TEX. CONST. Art. I § 8................................................................................ 1
TEX. CONST. Art. I § 10.............................................................................. 1
TEX. CONST. Art. I § 12.............................................................................. 1
TEX. CONST. Art. I § 19.............................................................................. 1
TEX. PENAL CODE 22.07(a)(4)................................................................... 1
TEX. PENAL CODE 22.07(a)(5)................................................................... 1
Tex. R. App. P. 66.3 (b).............................................................................. 5
Tex. R. App. P. 66.3 (c) ............................................................................. 5
Tex. R. App. P. 68.1................................................................................... 1

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

COMES NOW Appellant, Justin River Carter, and pursuant to Tex. R. App. P. 68.1, respectfully presents this Petition for Discretionary Review, and would respectfully show this Honorable Court the following:

## STATEMENT REGARDING ORAL ARGUMENT

This case addresses the validity of a Texas Statute in light of First Amendment Jurisprudence via a pre-trial writ of habeas corpus. Due to this implication, oral argument would assist this Honorable Court in its understanding of the case as well as provide an opportunity to address concerns that a written brief cannot fully accommodate standing alone.

## STATEMENT OF THE CASE

On April 10, 2013, Justin River Carter was charged by indictment under sections 22.07(a)(4) and (a)(5) of the Texas Penal Code. The cause number is CR2013-159 Pending in the 207th Judicial District Court of Comal County, Texas. Mr. Carter sought relief from his continued prosecution by filing a pretrial writ of habeas corpus where he argued that the charges against him violated his First Amendment rights as applied him and that the statutes under which he was charged were facially unconstitutional. A hearing was held on August 26 and 27 2014 where evidence was heard and submitted. On October 23, 2014 the trial court denied the application for writ of habeas corpus after due consideration. After the district court

1

denied relief, he took an appeal to the Third Court of Appeals. In an unpublished opinion, that court denied relief on cognizability grounds because Justin Carter's challenge was "as applied", as well as finding that the statute was not "facially" unconstitutional because it only applied to "true threats". Justin Carter brings this petition for discretionary review to challenge that denial.

## STATEMENT OF PROCEDURAL HISTORY

On August 31, 2015, the Third Court of Appeals issued an unpublished opinion. *Ex parte Carter*, 2015 Tex. App. LEXIS 9241 (Tex. App.—Austin 2015); attached hereto at **Appendix 1.** Mr. Carter did not file a motion for rehearing. After one extension of thirty days, this petition for discretionary review is timely if filed by Friday, October 30, 2015. See Tex. R. App. P. 4.1(a); Tex. R. App. P. 68.2(a).

## GROUNDS FOR REVIEW

Whether the Third Court of Appeals erred by failing to recognize and apply the analysis of this Court's past rulings which have found exceptions to the general rule that pretrial writs of habeas corpus claiming as-applied challenges are not cognizable especially when such an exception was necessary.

## ARGUMENT

### A. SUMMARY OF THE ARGUMENT

The continued prosecution of Justin Carter is an affront to the United States and Texas constitutional protections of free speech, due process and due course of law pursuant to the First, Fifth, and Fourteenth Amendments to the United States Constitution and Article 1, §§ 8, 10, 12, and 19 of the Texas Constitution. The statements for which Carter is being prosecuted cannot constitute a "true threat" in any context and never will be sufficient for submission to a jury for trial. The Third Court of Appeals failed to properly consider the peculiar and extraordinary scenario that this case presents and instead summarily denied Mr. Carter's appeal by making the erroneous blanket statement that "as-applied" challenges are not cognizable in a pretrial writ of habeas corpus. *Ex parte Carter*, _____ S.W.3d_____, 2015 Tex. App. LEXIS 9241 (Tex. App.—Austin 2015)

## B. REASONS FOR REVIEW

Had the court of appeals followed this Court's precedents rather than summarily refusing to consider them, it would have granted the writ on Mr. Carter's claims. The same case that the lower court cites as promoting the proposition that as-applied challenges are not cognizable in a blanket sense is not as emphatic as it is characterized. *See Ex parte Carter*, 2015 Tex. App. LEXIS at *16 (citing *Weise v. State*, 55 S.W.3d 617, 620-21 (Tex. Crim. App. 2001)).

Interestingly, the lower court even acknowledges that *Ex Parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991) was an as applied challenge. However they simply say it does not apply to the instant case with no justification, analysis, or explanation of what differentiates it other than calling it an "as applied to the indictment case." In fact, this Court's ruling was predicated upon the specific evidence of that case. "Appellant argues that § 25.05(g)(2), as applied to the unusual circumstances of his case, denies him equal protection because it makes his alleged conduct a felony, rather than a misdemeanor, "solely because he is not a resident of Texas." *Id* at 603 (Emphasis added). This Court held that the Constitution prohibited the application of the statute in question to that particular appellant under his indictment, and actually goes on to state further factual considerations where the statute may remain valid. *See Id.*

Furthermore, this Court allows double jeopardy to be raised by pretrial habeas which are also as applied challenges that require evidentiary facts. One would need to show evidence of the prior conviction and that is was the same person convicted. The Court reasons that disallowing a habeas claim at that stage in the proceedings would significantly undermine the Double Jeopardy Clause. *Ex parte Watkins*, 73 S.W.3d 264, 273 (Tex. Crim. App. 2002). That is because the Court recognizes that "…the Double Jeopardy Clause protects an individual against more than being

4

subjected to double punishments. It is a guarantee against being put to trial for the same offense." *Id*.

In the instant case the Third Court incorrectly concludes that no "as applied" challenge may be heard pretrial "because it depends on the development of the specific facts of the case showing how the statute is being applied to the defendant." *Ex parte Carter* 2015 Tex. App. LEXIS at *17. This reasoning arbitrarily ignores this Court's reasoning in *Boetscher* which turned on a factual determination resulting in a statute being prohibited by the Constitution **as applied** to those facts. *See Ex Parte Boetscher*, 812 S.W.2d 600.

Considering the existence of evidentiary hearings on pretrial writs, and the fact that there was in this case a hearing by the trial court presenting evidence for consideration by the appellate courts, how does the Third Court justify ignoring all factual considerations for pretrial writs? The blatant misapplication of this Court's precedent by the Third Court merits review under Tex. R. App. P. 66.3(b & c).

Mr. Carter developed an extensive record containing all of the facts necessary to make an informed decision on his as applied challenge at a hearing on the pretrial writ in the 207TH District Court, Comal County, Texas, in front of Judge Jack Robison on August 26, 2014 and August 27, 2014. [RR Volume 2-3]. However, the intermediate appellate court acted as if that extensive record does not exist. The court stated that facts have yet to be developed to resolve whether or not Mr. Carter's

5

comments, when taken in context, constitute protected speech. *Ex parte Carter* 2015 Tex. App. LEXIS at \*17. Curiously, the Court acknowledges in other portions of its opinion that an extensive evidentiary record is already established. In fact, the court references evidence contained in that record. *See Id* at 15-16 n. 5.

In *Weise*, this Court made a comprehensive list of cases and the factors used in determining when interlocutory review is appropriate. *Id.* at 619-20. *Weise* explicitly recognized exceptions to the general rule about challenging, "the sufficiency of the complaint, information, or indictment." *Id.* at. 620 This case presents many of those circumstances that justify its review. In listing the factors this Court came to this general proposition:

> Pretrial habeas should be reserved for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.

*Id.* at 21. This final iteration makes clear that this writ should have been granted relief.

Mr. Carter is being prosecuted for his speech, not his conduct. The prosecution of this case is a violation of his free speech rights, which is a substantive right. *Cohen v. California*, 403 U.S. 15, 24 (1971); *see also United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 812 (2000); *New York Times v. Sullivan*, 376 U.S. 254, 270

(1964). This gives weight to the first consideration mentioned in *Weise* supra. The only illegal act for which Mr. Carter is being restrained in his liberty by being held to bond conditions and put under fear of trial and punishment is an alleged posting on the social media website, www.facebook.com. The only statement that left him languishing in jail for five months was that electronic post. This evidence was presented in the hearing on the pretrial writ:



[RR Vol. 2 at 141, RR Vol. 5 Defendant's exhibit 9]. Further evidence provided by the State showed that the alleged screenshot came from an anonymous tip in Canada (of all places) that was forwarded to law enforcement in Texas. [RR Vol. 5 State's Exhibit 5]. No particular school was mentioned. Only one person appears to be

responding to the post and that person is clearly engaging in "trash talking" with him.

It is extraordinary that the case has come this far. The statement on its face is so clearly hyperbolic and sarcastic that it would be imprudent to proceed further. The evidence provided at the hearing on the pretrial writ provided more than enough evidence to permit a ruling to save the trial court the time and resources. Cases concerning these types of social media trifles that are overcharged simply due to its distastefulness will be easily disposed of with further guidance and a clear ruling by this Court. Without the misinterpretation of this Court's precedent the Third Court would have taken the time to weigh the factors provided in *Weise* and other cases decided by this Court. This would have resulted in declaring a violation of Mr. Carter's substantive right to free speech under the First Amendment. With pervasive growth of social media this Court should be careful to protect the substantive right to speak "foolishly and without moderation" as much as it would informed and responsible criticism. *See Cohen*, 403 U.S. at 26 (citing *Baumgartner v. United States*, 322 U.S. 665, 673-674 (1944)). It should also recognize that providing a green light to trial courts to make quick determinations that we all make in day to day lives (considering the abundance of drivel like this on the internet) will save a vast amount of judicial resources. A ruling from this Court in favor of relief would

also send a message to law enforcement to respect Free Speech which includes a citizen's right to speak drivel.

WHEREFORE, PREMISES CONSIDERED, Justin Carter respectfully prays that this Court grant discretionary review and thereafter reverse the judgment of the court of appeals denying relief.

Respectfully Submitted,
THE LAW OFFICE OF CHAD VAN BRUNT
310 S. St. Mary's Street
Suite 1840 – Tower Life Bldg.
San Antonio, Texas 78205
vanbruntlaw@live.com
Tel: 210-399-8669
Fax: 210-568-4927

By: /s/Chad Van Brunt
Chad Van Brunt
State Bar No. 24070784
Attorney for Justin Carter

## CERTIFICATE OF SERVICE

This certifies that on November 2, 2015, a true and correct copy of the above and foregoing Petition for Discretionary Review was served on Comal County District Attorney's Office 150 N. Seguin, Suite 307 New Braunfels, Texas 78130 via fax to (830) 608-2008.

/s/ Chad P. Van Brunt

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, this document contains 1375 words.

/s/ Chad P. Van Brunt

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-14-00669-CR
---

## Ex parte Justin River Carter

---
### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-159, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Appellant Justin River Carter was arrested and charged by indictment, in two paragraphs alleging alterative manner and means, with terroristic threat. *See* Tex. Penal Code § 22.07(a)(4), (5). He filed a pretrial application for writ of habeas corpus challenging the constitutionality of the subsections of the terroristic threat statute under which he is charged. After conducting an evidentiary hearing, the trial court denied relief. In two points of error on appeal, appellant asserts that the trial court erred by not finding the statutory subsections under which he is charged facially unconstitutional and unconstitutional as applied to him. We affirm the trial court's order denying relief.

## DISCUSSION

### Facial Challenge

In his first point of error, appellant complains that the trial court abused its discretion in not finding subsections (a)(4) and (a)(5) of section 22.07 of the Texas Penal Code facially unconstitutional. He argues that these subsections are facially overbroad and vague in violation of

the First, Fifth, and Fourteenth Amendments to the United States Constitution and Article I of the Texas Constitution. *See* U.S. Const. amend. I, XIV; Tex. Const. art. I, §§ 8, 10, 12, 19.[1]

A claim that a statute is unconstitutional on its face may be raised by pretrial writ of habeas corpus because if the statute is facially invalid, then the charging instrument is void. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001); *Ex parte Joyner*, 367 S.W.3d 737, 739 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). We generally review a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse of discretion standard. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts arbitrarily or unreasonably. *Ex parte Ali*, 368 S.W.3d at 830. However, when the trial court's ruling and determination of the ultimate issue turns on the constitutionality of a statute, we review the trial court's ruling de novo. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *Ex parte Perusquia*, 336 S.W.3d 270, 275 (Tex. App.—San Antonio 2010, pet. ref'd). A facial attack upon a penal statute is solely and entirely a legal question subject to de novo review. *Ex parte Lo*,

---

[1] In his argument, appellant provides authority only regarding the United States Constitution and does not provide separate authority or argument for his state constitutional claim. Because appellant does not argue that the Texas Constitution provides more protection than the United States Constitution, nor explain how it would, we properly resolve this claim pursuant to the United States Constitution. *See Gilley v. State*, 418 S.W.3d 114, 120 n.23 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 57 (2014); *Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010); *Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); *Jessop v. State*, 368 S.W.3d 653, 681 (Tex. App.—Austin 2012, no pet.).

424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009).

Whenever we are confronted with an attack upon the constitutionality of a statute, we generally presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily.[2] *Ex parte Lo*, 424 S.W.3d at 14–15; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Webb v. State*, 109 S.W.3d 580, 582 (Tex. App.—Fort Worth 2003, no pet.); *Ex parte Dave*, 220 S.W.3d 154, 156 (Tex. App.—Fort Worth 2007, pet. ref'd). The burden rests upon the person who challenges the statute to establish its unconstitutionality. *Rousseau*, 396 S.W.3d at 557; *Rodriguez*, 93 S.W.3d at 69; *Garcia v. State*, 212 S.W.3d 877, 887 (Tex. App.—Austin 2006, no pet.). We must uphold a statute if we can determine a reasonable construction that will render it constitutional and carry out legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *Garcia*, 212 S.W.3d at 887.

To prevail on a facial challenge to the constitutionality of a statute, a party generally must show the statute always operates unconstitutionally, in all possible circumstances. *Rosseau*, 396 S.W.3d at 557; *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011); *see Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set

---

[2] We note that the usual presumption of constitutionality is reversed when the government seeks to restrict and punish speech based on its content. *Ex parte Lo*, 424 S.W.3d 10, 14–15 (Tex. Crim. App. 2013). "Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption." *Id.* (internal citations omitted).

3

of circumstances exists under which the statute will be valid."). In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, not how it operates in practice. *Salinas v. State*, ___ S.W.3d ___, No. PD-0419-14, 2015 WL 3988955, at *3 (Tex. Crim. App. July 1, 2015); *State ex rel. Lykos*, 330 S.W.3d at 908.

The Penal Code provisions at issue here provide:

(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:
. . .

(4) cause impairment or interruption of public communications, public transportation, public water, gas, or power supply or other public services;

(5) place the public or a substantial group of the public in fear of serious bodily injury; . . . .

Tex. Penal Code § 22.07(a)(4), (5).

Appellant contends that the above statutory subsections of the terroristic threat statute are unconstitutionally overbroad on their face because they criminalize "a vast amount of constitutionally protected speech" in violation of the First Amendment to the United States Constitution. He also asserts that they are unconstitutionally vague because they fail to provide adequate notice of the prohibited conduct.

A statute is impermissibly overbroad if it sweeps within its coverage "a substantial amount of" speech or other conduct protected by the First Amendment as compared to any activity it proscribes. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982); *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989); *Clark v. State*,

4

665 S.W.2d 476, 482 (Tex. Crim. App. 1984); *Garcia*, 212 S.W.3d at 887. Because of the wide-reaching effects of striking down a statute on its face, at the request of one whose own conduct may be punished despite the First Amendment, the United States Supreme Court has recognized that "the overbreadth doctrine is 'strong medicine' and [courts should employ] it with hesitation, and then 'only as a last resort.'" *Goyzueta v. State*, 266 S.W.3d 126, 131 (Tex. App.—Fort Worth 2008, no pet.) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *see Garcia*, 212 S.W.3d at 887–88. Thus, we will not strike down a statute for overbreadth unless there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Garcia*, 212 S.W.3d at 888 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984)).

The First Amendment guarantees freedom of speech, affording protection to symbolic or expressive conduct as well as to actual speech. *See* U.S. Const. amend. I; *Virginia v. Black*, 538 U.S. 343, 358 (2003). Free speech protections of the First Amendment are implicated when the government seeks to regulate protected speech or expressive conduct. *See Scott v. State*, 322 S.W.3d 662, 668–69 (Tex. Crim. App. 2010), *overruled in part on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014); *Ex parte Thompson*, 414 S.W.3d 872, 876 (Tex. App.—San Antonio 2013), *aff'd*, 442 S.W.3d 325 (Tex. Crim. App. 2014). The protections afforded by the First Amendment, however, are not absolute, and courts have long recognized that the government may regulate certain categories of expression consistent with the Constitution. *Black*, 538 U.S. at 358; *Walker v. State*, 327 S.W.3d 790, 796 (Tex. App.—Fort Worth 2010, no pet.); *Coggin v. State*, 123 S.W.3d 82, 87 (Tex. App.—Austin 2003, pet. ref'd). The First Amendment

5

permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Black*, 538 U.S. at 358–59; *see Walker*, 327 S.W.3d at 796; *see, e.g.*, *Black*, 538 U.S. at 358–59 (listing types of words such as "fighting words" as generally outside First Amendment" and noting that First Amendment "permits a State to ban a 'true threat'"); *R. A. V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) (concluding that threats of violence are outside the First Amendment).

In analyzing a facial challenge to the overbreadth and vagueness of a statute, courts must first determine whether the statute reaches "a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates*, 455 U.S. at 494; *Garcia*, 212 S.W.3d at 887. In analyzing the text of the terroristic threat statute and making this determination here, we note the narrow applicability of the statute. By its terms, the statute punishes only those individuals who threaten to commit a crime involving violence to persons or property. *See* Tex. Penal Code § 22.07(a). This type of threat is not entitled to First Amendment protections. *See Black*, 538 U.S. at 359 (explaining that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence"); *Watts v. United States*, 394 U.S. 705, 707 (1969) (recognizing distinction between threats and constitutionally protected speech: "What is a threat must be distinguished from what is constitutionally protected speech."); *Walker*, 327 S.W.3d at 796 ("The First Amendment permits a State to ban a 'true threat.'"); *Webb v. State*, 991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (concluding that retaliation statute does not infringe into area of constitutionally protected freedoms because

6

it regulates only threatening speech: "A threat is not protected speech."); *Jacobs v. State*, 903 S.W.2d 848, 851 (Tex. App.—Texarkana 1995, pet. ref'd) ("Threats, however, are not constitutionally protected."); *see, e.g.*, *Webb*, 109 S.W.3d at 583 ("[B]ecause pornography produced with real children is not a category of speech protected by the First Amendment, the statute's prohibition of these materials does not violate the First Amendment."); *Ex parte Dave*, 220 S.W.3d at 156 (noting that "obscene material itself . . . is not protected by the First Amendment"); *Puckett v. State*, 801 S.W.2d 188, 194 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (holding appellant's threats to police officer were not entitled to constitutional protection).

Because the statute is limited to threats of violence and falls outside the protections of the First Amendment, we conclude that it does not reach "a substantial amount of constitutionally protected conduct." Accordingly, we overrule appellant's overbreadth challenge. *See Village of Hoffman Estates*, 455 U.S. at 494 (if statute does not reach "a substantial amount of constitutionally protected conduct," overbreadth challenge fails); *Bynum*, 767 S.W.2d at 772–73 (overbreadth doctrine limited in context to First Amendment issues); *Goyzueta*, 266 S.W.3d at 131 ("An overbreadth attack on a statute is recognized only in the context of a First Amendment challenge.") (citing *United States v. Salerno*, 481 U.S. 739 (1987)); *see, e.g.*, *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (concluding that because interference with public duties statute does not restrict substantial amount of constitutionally protected conduct, it is not unconstitutionally overbroad).

Also in his first point of error, appellant argues that the statutory subsections of the terroristic threat statute under which he is charged are unconstitutionally vague—that is, they fail to

give adequate notice of the prohibited conduct—because they fail to define certain terms. In particular, he contends that subsection (a)(4) of the statute is unconstitutionally vague because it does not define the phrase "other public services" and that subsection (a)(5) is unconstitutionally vague because it does not define what constitutes "the public" or "a substantial group of the public."

A vagueness challenge is applicable to all criminal laws, not just those that regulate speech. *Bynum*, 767 S.W.2d at 773; *Duncantell*, 230 S.W.3d at 844; *Webb*, 991 S.W.2d at 416. If, as we have concluded in this case, a statute does not substantially implicate constitutionally protected speech or conduct, a facial vagueness challenge is sustained only if the challenging party shows the statute to be unconstitutionally vague in all of its applications.[3] *Ex parte Ellis*, 309 S.W.3d at 80; *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *Duncantell*, 230 S.W.3d at 845; *see Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012) ("In a facial challenge to the vagueness of a law, the appellant must show that the law is impermissibly vague in all of its applications.").

A penal statute is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006); *Garcia,* 212 S.W.3d at 889. A law must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and must provide explicit standards to those who enforce and apply it. *Grayned*, 408 U.S. at 108; *see Watson*, 369 S.W.3d at 870 ("Laws

_____

[3] In contrast, the vagueness doctrine "demands a greater degree of specificity than in other contexts" when a statute is capable of reaching First Amendment freedoms. *See Long v. State*, 931 S.W.2d 285, 287–88 (Tex. Crim. App. 1996); *Ex parte Perry*, No. 03-15-00063-CR, ___ S.W.3d ___, 2015 Tex. App. LEXIS 7662, at *51 (Tex. App.—Austin July 24, 2015, no pet. h.).

cannot be vague or arbitrary; they must inform a person of ordinary intelligence of what is prohibited by the law so that he may act accordingly and must provide explicit standards to those who enforce them."); *Lawrence*, 240 S.W.3d at 915 ("A statute is void for vagueness if it fails to define the criminal offense 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement.'") (quoting *Holcombe*, 187 S.W.3d at 499). A vague law "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09.

When considering claims of vagueness, courts have frequently referenced conducting a two-part inquiry in the examination of a criminal statute for vagueness. *See, e.g.*, *Duncantell*, 230 S.W.3d at 844; *Coggin*, 123 S.W.3d at 87; *see also Grayned*, 408 U.S. at 108. This examination is not necessarily a two-part test, but rather one inquiry encompassing two considerations: (1) clarity for the sake of providing notice to individuals of what constitutes prohibited criminal conduct, and (2) clarity for the sake of establishing standards to avoid arbitrary or improperly selective application of the statute by law enforcement. These two considerations are, in reality, two sides of the same coin.

The first side of the coin (or consideration of the inquiry) is whether an ordinary, law-abiding person receives sufficient information from the statute that his conduct risks violating the criminal law. *Duncantell*, 230 S.W.3d at 844; *Coggin*, 123 S.W.3d at 87; *see Grayned*, 408 U.S. at 108. All penal laws must give notice to the populace about what activity is made criminal to provide fair notice to persons before making their activity criminal. *Bynum*, 767 S.W.2d at 773;

9

*Duncantell*, 230 S.W.3d at 844–45. A criminal statute need not be mathematically precise; it need only give fair warning, in light of common understanding and practices. *Bynum*, 767 S.W.2d at 773 (citing *Grayned*, 408 U.S. at 110).

The second side of the coin (or consideration of the inquiry) is whether the statute is sufficiently definite to provide standards to law enforcement personnel for consistent unbiased application when enforcing the statute. *See id.* A statute must be sufficiently definite to avoid the possibility of arbitrary and erratic arrests and convictions. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *Holcombe*, 187 S.W.3d at 499.

Appellant argues that the failure to define the challenged terms renders the subsections of the terroristic threat statute under which he is charged vague because they do not provide adequate notice of the prohibited conduct and they give police officers and prosecutors "too much room for interpretation" when applying the statute. However, a statute is not unconstitutionally vague merely because it fails to define words or phrases. *Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1997); *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988); *Coggin*, 123 S.W.3d at 88. Statutory words and phrases are to be "read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code § 311.011(a); *see* Tex. Penal Code § 1.05(b) (making section 311.011 applicable to Texas Penal Code). Terms not defined in a statute are to be given their plain and ordinary meaning; words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Watson*, 369 S.W.3d at 870 (citing *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978)); *Ex parte Morales*, 212 S.W.3d 483, 499 (Tex.

10

App.—Austin 2006, pet. ref'd). In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood. *Ely*, 582 S.W.2d at 419; *see Mays v. State*, 318 S.W.3d 368, 389 n.77 (Tex. Crim. App. 2010); *Celis v. State*, 354 S.W.3d 7, 36 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013); *State v. Wofford*, 34 S.W.3d 671, 680 (Tex. App.—Austin 2000, no pet.).

Here, the term "other public services" in subsection (a)(4) is a phrase easily understood by persons of common intelligence, particularly when taken in context with the specific types of public services listed in the subsection. Similarly, the terms "the public" and "a substantial group of the public" are easily understood by persons of common intelligence. While appellant argues that one is unable to determine what exact number of people must be placed in fear of serious bodily injury under subsection (a)(5), no specific quantity is required to communicate the prohibited conduct. *See Grayned*, 408 U.S. at 110–12 (statutory provision need not be mathematically precise; it need only give fair warning, in light of common understanding and practices). When measured by common understanding and practices and construing the challenged phases as generally understood, the subsections at issue give a person of ordinary intelligence fair notice of the prohibited conduct: a person cannot make threats to commit criminal acts of violence against persons or property with the intent to shut down or disrupt public services or with the intent to frighten others with significant physical harm. *See United States v. Petrillo*, 332 U.S. 1, 8 (1947) ("The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.").

11

Further, because these subsections of the terroristic threat statute adequately detail the prohibited conduct, the enforcement of the statute is not relegated to the subjective interpretation of police officers or prosecuting attorneys. *See Bynum*, 767 S.W.2d at 775; *Duncantell*, 230 S.W.3d at 846. The language of the statute provides adequate guidance to law enforcement authorities to such a degree that the risk of improperly motivated selective enforcement is obviated. *See Bynum*, 767 S.W.2d at 775; *Duncantell*, 230 S.W.3d at 846.

Because subsections (a)(4) and (a)(5) of the terroristic threat statute give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards to those who enforce and apply the statute, we hold that these subsections are not impermissibly vague. We overrule appellant's vagueness challenge.

In conclusion, because the subsections of the terroristic threat statute under which appellant is charged—sections 22.07(a)(4) and (a)(5)—are neither overbroad nor impermissibly vague, appellant has failed to meet his burden in demonstrating that the challenged statutory subsections are facially unconstitutional.[4] Accordingly, the trial court did not abuse its discretion

---

[4] Appellant contends that the burden is on the State here to prove the validity of the challenged statutory subsections because the terroristic threat statute regulates speech based on content. *See Ex parte Lo*, 424 S.W.3d at 15 ("Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption.") (internal citations omitted). However, the presumption-of-invalidity standard of review applies to "First Amendment, content-based statutes." *See id.* at 16. Because we conclude the challenged subsections of the terroristic threat statute do not regulate First Amendment protected speech or conduct, we apply the usual standard of review, including the presumption of the statute's validity and the challenger's burden to demonstrate the contrary.

12

in denying appellant's pretrial application for writ of habeas corpus on that ground. We overrule

appellant's first point of error.

**As Applied Challenge**

In his second point of error, appellant asserts that the trial court erred by not finding

Penal Code sections 22.07(a)(4) and (a)(5), the subsections of the terroristic threat statute under

which he is charged, unconstitutional as applied to him. The indictment in this case alleges, in

relevant part, that appellant:

PARAGRAPH I

did then and there, with the intent to cause impairment or interruption of public communications, public transportation, public water, gas or public supply, or other public service, threaten to commit any offense involving violence to any person or property, to wit: by threatening to "shoot up a kindergarten, watch the blood rain down and eat the beating heart out of one of them."

PARAGRAPH II

did then and there, with the intent to place the public or a substantial group of the public in fear of serious bodily injury, threaten to commit any offense involving violence to any person or property, to-wit: by threatening to "shoot up a kindergarten, watch the blood rain down and eat the beating heart out of one of them."

According to the record, these allegations are based on statements appellant allegedly made on the

online social networking service, Facebook.[5] Appellant claims that, when considered in context, his

---

[5] The record contains a screenshot purportedly from appellant's Facebook page, which reflects a series of three statements attributed to appellant:

I'm f****d in the head alright. I think I'ma SHOOT UP A KINDERGARTEN

comments on his Facebook post were "sarcastic, hyperbolic[,] and conditional" and do not constitute a "true threat."

Pretrial habeas, followed by an interlocutory appeal, is an "extraordinary remedy," and appellate courts should be careful to ensure that it is not misused to secure pretrial appellate review of matters that should not be put before appellate courts at the pretrial stage. *Ex parte Ellis*, 309 S.W.3d at 79 (citing *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). Under clear Texas Court of Criminal Appeals precedent, a pretrial writ of habeas corpus may not be used to advance an "as applied" challenge to the constitutionality of the statute. *Id.*; *Ex parte Weise*, 55 S.W.3d at 620–21; *cf. Ex parte Perry*, No. 03-15-00063-CR, ___ S.W.3d ___, 2015 Tex. App. LEXIS 7662, at *22–25 (Tex. App.—Austin July 24, 2015, no pet. h.) (discussing *Ex parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991), one case in which the Texas Court of Criminal Appeals seemingly entertained a pretrial habeas of an "'as-applied-to-the-indictment'" challenge, not relevant to the challenge before us). A claim that a statute is unconstitutional "as applied" is a claim that the statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular facts and circumstances. *State ex rel. Lykos*, 330 S.W.3d at 910; *Gillenwaters v. State*, 205 S.W.3d 534, 537 n.3 (Tex. Crim. App. 2006). Consequently, an "as applied" constitutional challenge may not be resolved pretrial because it depends on development of the specific facts of the case showing how the statute is being applied to the defendant. *State ex*

---

AND WATCH THE BLOOD OF THE INNOCENT RAIN DOWN

. . .

AND EAT THE BEATING HEART OF ONE OF THEM

14

*rel. Lykos*, 330 S.W.3d at 910; *State v. Rosseau*, 398 S.W.3d 769, 778 (Tex. App.—San Antonio 2011), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013).

Here, appellant's claim that his comments, when taken in context, do not suffice to constitute a "true threat," clearly raises an "as applied" challenge to the constitutionality of Penal Code sections 22.07(a)(4) and (a)(5), the resolution of which is dependent on the facts of the case—which have yet to be developed through trial. *See State ex rel. Lykos*, 330 S.W.3d 910 ("An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner."); *Flores v. State*, 245 S.W.3d 432, 442 (Tex. Crim. App. 2008) (Cochran, J., concurring) ("[A]n attack upon the constitutionality of a statute as it is applied in the particular case depends upon the specific facts of that case adduced at trial. Thus, a challenge to the constitutionality of a penal statute 'as applied' to the defendant can be made only after all of the evidence is heard."). Accordingly, we conclude that appellant's "as applied" challenge is not cognizable on a pretrial writ. *See Ex parte Ellis*, 309 S.W.3d at 81–82 (appellate court should not have addressed whether money-laundering statute applies to checks because claim raised as-applied challenge to statute and was thus not cognizable in pretrial habeas proceedings); *Ex parte Weise*, 55 S.W.3d at 621 (claim that illegal-dumping statute was unconstitutional as applied to the defendant was not cognizable on pretrial writ of habeas corpus). We overrule appellant's second point of error.

15

**CONCLUSION**

Having overruled appellant's two points of error, we affirm the trial court's order denying appellant's pretrial application for writ of habeas corpus.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 31, 2015

Do Not Publish