**AFFIRM; and Opinion Filed February 7, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-01256-CR
_____

**JUSTIN LEE GARCIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. MB16-75150**

## OPINION

Before Justices Lang, Evans, and Schenck
Opinion by Justice Schenck

Justin Lee Garcia appeals his conviction for the offense of terroristic threat. In seven issues, appellant challenges the constitutionality of the statute under which he was convicted and its application to his Facebook statements concerning police officials. We affirm his conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

The State charged appellant with the offense of terroristic threat by intentionally threatening to commit aggravated assault and murder (an offense involving violence) against any person or property with intent to cause a reaction of any type by the City of Dallas Police Department (an official or volunteer agency organized to deal with emergencies). *See* TEX. PENAL

CODE ANN. § 22.07(a)(1) (West Supp. 2017).[1]  In an information, appellant was alleged to have committed the offense on July 6, 2016, by making the following Facebook post:

> All this police shooting people is bringing the end of the world.  I can honestly say when I decide to snap I will personally go around and see how many police officials I can kill cause that's wat [sic] their [sic] doin [sic] kill is [sic] for no reason getting away with it for the last time it's time America stands up there's a lot more of us than police officials *we* need stand up and put a stop to all that. [T]hey get to take our lives take us from our family friends and most of the time they won't ever see a prison cause of a small piece of cheap metal…Dallas police be on notice fr fr.[2]

The Dallas Police Department opened an investigation that same day.  Five Dallas police officers were shot and killed the next day.   Appellant was interviewed and arrested the following day but not for those shootings.

Appellant filed both a motion to dismiss and quash the information, and an application for writ of habeas corpus in which he challenged the constitutionality of section 22.07(a)(1).[3]  In his motion to dismiss or quash the information, appellant asserted his statements were not true threats, and that section 22.07(a)(1) is facially invalid because it is vague and overbroad, and is invalid as applied to appellant because it restrains his political speech.  After a hearing on appellant's application for writ of habeas corpus, the trial court orally denied appellant's writ application and motion to dismiss and quash and found the terroristic threat statute was not vague or overbroad and appellant's statement, communicating a desire to kill Dallas police officers, constituted a true threat rather than a protected political expression.  A jury was unable to reach a verdict in this case, and a mistrial was declared.  Appellant then entered a negotiated plea of no contest in exchange for 150 days' confinement in the Dallas County jail.  This appeal followed.

---

[1] Section 22.07(a)(1) provides "[a] person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to: (1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies[.]"

[2] Dallas Police Department Criminal Intelligence Division Detective Brian Emerson testified that the acronym "fr" means for real.

[3] This Court dismissed appellant's appeal of his pretrial application for writ of habeas corpus for lack of jurisdiction. *Ex parte Justin Lee Garcia*, No. 05-16-01257-CR, 2017 WL 1532051 (Tex. App.—Dallas Apr. 25, 2017, pet. ref'd) (mem. op., not designated for publication).

DISCUSSION

I.     True Threat

In his first issue, appellant urges the First Amendment of the United States Constitution prohibits his prosecution for the statements he posted on Facebook because they were not "true threats." Because appellant's first issue is addressed exclusively to the federal Constitution, we will confine our analysis to state and federal authority applying it.

Free speech protections of the First Amendment are implicated when the government seeks to regulate protected speech or expressive conduct. *See Scott v. State*, 322 S.W.3d 662, 668–69 (Tex. Crim. App. 2010), *overruled in part on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014). The protections afforded by the First Amendment, however, are not absolute, and courts have long recognized that the government may nevertheless regulate certain categories of expression. *Virginia v. Black*, 538 U.S. 343, 358 (2003); *Walker v. State*, 327 S.W.3d 790, 796 (Tex. App.—Fort Worth 2010, no pet.). The First Amendment thus permits "restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *See, e.g., Black*, 538 U.S. at 358–59; *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992); *Walker*, 327 S.W.3d at 796 (concluding that threats of violence are outside the First Amendment).

As relevant here, the First Amendment leaves the states free to ban speech amounting to a "true threat." *Black*, 538 U.S. at 359. "True threats" encompass those statements by which the speaker communicates an intent to commit an act of unlawful violence to a particular individual or group of individuals, regardless of whether the speaker actually intends to carry out the threat. *Id.* at 359–60. Thus, even if the threat of violence is a subjectively false statement of fact, it is not worthy of constitutional protection. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

340 (1974) (discussing defamation and the First Amendment); *Schenck v. United States*, 249 U.S. 47, 52 (1919) (no First Amendment right to falsely yell "fire" in a crowded theater); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771–73 (1976) (restricting commercial speech protections to truthful speech promotes a lawful transaction).[4]  We are aware of the *Alvarez* decision, imposing a First Amendment bar to a statute criminalizing false speech amounting to falsely claiming to have received a military award of honor. *United States v. Alvarez*, 567 U.S. 709 (2012).  In that case, however, as the Supreme Court suggested, the statute advanced no governmental interest apart from the suppression of the message. *Id.* at 726.  Here, in contrast, the statute serves interests in promoting public safety and curbing the misdirection of resources.

Appellant relies on *Elonis v. United States* to urge that in order to be convicted for making a terroristic threat, he must have possessed a subjective intent to convey a true threat.  135 S. Ct. 2001, 2008–12 (2015).  In other words, according to appellant's reading, it must be shown he intended to signal his actual intention to murder police officers before his statement can be treated as a "true threat" for First Amendment purposes.  Appellant's reliance on *Elonis* as to the required intent is misplaced.  The *Elonis* decision involved a federal criminal statute that made "it a crime to transmit in interstate commerce 'any communication containing any threat . . . to injure the person of another.'" *Id.* at 2004 (quoting 18 U.S.C. § 875(c)).  Because section 875(c) lacked any indication of the requisite culpable mental state for the prosecution, the court held that criminal liability could not be imposed merely because a reasonable person would have perceived a

---

[4] *See also  Bennett v. Hendrix*, 325 Fed. Appx. 727, 742 (11th Cir. 2009) ("[S]peech constitut[ing] a false factual assertion [ ] is not protected by the First Amendment."); *United States v. Capps*, 140 Fed. Appx. 911, 913 (11th Cir. 2005) ("Capps had no First Amendment right to make a false statement."); *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 228 (3d Cir. 2004) ("[L]ies and untruthful statements are protected under First Amendment jurisprudence only in those rare instances where they contribute to the uninhibited marketplace of ideas." (quotation omitted)); *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1089 (7th Cir. 2002) ("The First Amendment does not protect knowingly false speech."); *Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999) ("[I]ntentional or reckless falsehood, even political falsehood, enjoys no First Amendment protection."); *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 577 (6th Cir. 1991) ("[F]alse speech, even political speech, does not merit constitutional protection if the speaker knows of the falsehood or recklessly disregards the truth."); *Gates v. City of Dallas*, 729 F.2d 343, 346 (5th Cir. 1984) (no First Amendment right to knowingly file a false complaint against police); *United States v. Rutherford*, 332 F.2d 444, 446 (2d Cir. 1964) (no First Amendment right to knowingly make false comments regarding the possession of an explosive device while on board an aircraft).

communication as a threat, as had been instructed by the trial court; rather, the defendant must have intended to issue the threat <u>or</u> known that the communication would be viewed as a threat. *Id.* at 2012. *Elonis* did not speak to the issue presented here—whether a state might prosecute conduct consisting of a threat of violence where reasonable jurors could find an intent to cause emergency personnel to react.

Unlike the statute at issue in *Elonis,* the statute at issue here contains a mental state requirement. *See* TEX. PENAL CODE ANN. § 22.07(a)(1) (West Supp. 2017). Section 22.07(a)(1) provides that an individual makes a terroristic threat when he threatens to commit any offense involving violence to any person or property *with intent* to cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies. *Id.* Thus, section 22.07(a)(1) contains a mens rea requirement that was not present in the federal statute at issue in *Elonis. See e.g., United States v. Ziba*, 653 Fed. Appx. 809, 810 (5th Cir. 2016); *Villarreal v. State*, 504 S.W.3d 494, 509 (Tex. App.—Corpus Christi 2016, pet. ref'd). Moreover, the intent requirement under section 22.07(a)(1) is directed to the speaker's appreciation for the probability of eliciting a reaction, not the speaker's subjective intention to carry through with the threat. A fact finder is entitled to consider the content of appellant's statement and discount his profession that he did not intend to provoke a response in deciding the intent element of the offense charged. *See, e.g., United States v. Williamson*, 81 F. Supp. 3d 85, 92 (D.C. Cir. 2015) (defendant made threatening 911 call under circumstances allowing reasonable jurors to find requisite intent despite defendant's contrary professions).

Thus, contrary to appellant's urging, his subjective intent as espoused by him does not control the mens rea required to establish the charged offense. Rather, the relevant inquiry is whether, given appellant's plea of no contest, a jury could have concluded that by posting a comment about killing police officers appellant intended to provoke a reaction. Appellant notes

–5–

that he did not "tag" the police department on his post, and urges, on that basis, that he could not have intended to provoke a reaction. Appellant cites no authority requiring a "tag" in order for a social media post to evidence an intent to cause a reaction, and we find none. The record shows appellant warned that "Dallas police be on notice fr" and the Dallas Police Department, evidently aware of a potential for acute unrest at the time, took notice and responded the very same day. Given the police shootings in Dallas the following day, the Dallas Police Department's investigation reaction to appellant's post the day prior cannot be said to be fanciful. A fact finder in this case could conclude appellant intended to cause a response to his post, regardless of whether he actually intended to express or to carry out the threat. Consequently, appellant's complaint concerning a lack of requisite intent to support a conviction for terroristic threat is unfounded.

Next, appellant claims his statements, like the statements of the accused in *Elonis*, were merely "therapeutic expressions." While appellant contends that the Supreme Court held Elonis's remarks concerning violence against patrons and employees of a park, his estranged wife, police officers, a kindergarten class, and an FBI agent, were therapeutic and not true threats, the Supreme Court did not so hold and instead reversed Elonis's conviction, for transmitting through interstate commerce a threat to injure another, due to an improper jury instruction. *Elonis*, 135 S. Ct. at 2012.[5] On remand, the court of appeals held the jury charge error was harmless and upheld Elonis's conviction. *United States v. Elonis*, 841 F.3d 589, 601 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 67 (2017). Thus, *Elonis* does not support appellant's contention that his statements could not be construed to be true threats.

Finally, appellant urges because he conditioned his comment that he will personally go around and see how many police officials he can kill on "*when* [he] decide[s] to snap," his

---

[5] The jury was instructed that the Government need prove only that a reasonable person would regard Elonis's communications as threats, and that was error. *Id.* The offense for which Elonis was convicted requires a finding that the defendant transmitted a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat. *Id.*

statements could not be true threats because they lacked specificity of time or an indication of an imminent intent to conduct the killings. We disagree. The expression of "when" imports a timing element that is lacking in the statute under which appellant was prosecuted and convicted and is immaterial to the analysis.[6]

Generally, whether appellant's statements were or were not "true threats" is a fact question for the trier of fact. *See Ex parte Carter*, 514 S.W.3d 776, 784 (Tex. App.—Austin 2017, pet. ref'd). In the face of appellant's plea of no contest, we conclude that a rational trier of fact could conclude appellant's statements concerning killing police were in fact "true threats" and not hyperbole or purely political expressions. Accordingly, we overrule appellant's first issue.

II.     Constitutional Challenges on Overbreadth and Vagueness Grounds

Whenever we are confronted with an attack upon the constitutionality of a statute, we generally presume both its validity and that the legislature did not act unreasonably or arbitrarily. *Ex parte Lo*, 424 S.W.3d 10, 14–15 (Tex. Crim. App. 2013). The burden rests squarely on the person who challenges the statute to establish its unconstitutionality. *State v. Rousseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). We must uphold a statute if we can determine a reasonable construction that will render it constitutional and carry out legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

Due process requires that criminal statutes be reasonably definite as to the persons and the conduct within their scope and the punishment that may be imposed for their violation. *Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984). Penal statutes must be drafted in such a way as to permit ordinary people to understand the conduct prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

---

[6] A person hearing he is to be murdered is likely to seek official protection regardless of whether he is to be killed tomorrow or next Tuesday.

A statute is considered impermissibly overbroad if, in addition to proscribing activities that may constitutionally be forbidden, it also sweeps within its coverage a substantial amount of constitutionally protected speech or conduct. See *Clark*, 665 S.W.2d at 482.

In analyzing a facial challenge to the overbreadth and vagueness of a law, the United States Supreme Court has stated that "[a] court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). The Supreme Court has further stated that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Id.* Consequently, we consider appellant's overbreadth challenge first.

A. Overbreadth Challenge

In issues four and five, appellant asserts a facial challenge to section 22.07(a)(1) on overbreadth grounds. More particularly, appellant urges the statute is facially overbroad in violation of the United States and Texas Constitutions.

The overbreadth doctrine has been described as "strong medicine" that is used sparingly and only as a last resort as it carries the potential for the judiciary to entangle itself in the drafting of legislation. *State v. Johnson*, 475 S.W.3d 860, 865 (Tex. Crim. App. 2015); *see also N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 14 (1988). To be unconstitutionally overbroad, the statute must prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on "fanciful hypotheticals." *Johnson*, 475 S.W.3d at 865 (quoting *United States v. Stevens*, 559 U.S. 460, 485 (2010)). A statute may not be held overbroad merely because it is possible to conceive of some impermissible

applications.  *United States v. Williams*, 553 U.S. 285, 303 (2008).

In analyzing the text of the terroristic threat statute and making this determination here, we note the narrow applicability of the statute.  By its terms, the statute reaches to and punishes only those individuals who threaten to commit a crime involving violence to persons or property under circumstances supporting the inference that the speaker intended to elicit an official response.  *See* TEX. PENAL CODE Ann. § 22.07(a).  As we have held above, whether the speaker actually intended to carry through with the threat or spoke falsely is of no consequence.  *See Black*, 538 U.S. at 359 (explaining that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence"); *Schenck*, 249 U.S. at 52.

Because the statute is limited to threats of violence and falls outside the protections of the First Amendment, we conclude that it does not reach a substantial amount of constitutionally protected conduct.  Accordingly, we overrule appellant's fourth and fifth issues challenging the statute on overbreadth grounds.  *See Hoffman Estates*, 455 U.S. at 494 (if statute does not reach "a substantial amount of constitutionally protected conduct," overbreadth challenge fails); *Bynum v. State*, 767 S.W.2d 769, 772–73 (Tex. Crim. App. 1989) (overbreadth doctrine limited in context to First Amendment issues).

As to appellant's contention in issues six and seven, that the statute is overbroad as applied to his conduct, the crux of appellant's argument is that his Facebook post was a political statement protected by the United States and Texas Constitutions and not a "true threat."  Appellant's argument that his statements "are constitutionally protected" is premised upon his contention that the statements do not fall within the conduct proscribed by the statute.  This does not challenge the constitutionality of the statute as applied to his conduct; it challenges the application of the statute to his conduct.  *See, e.g., Ex parte Carter*, 514 S.W.3d at 782.  We have previously concluded that

–9–

appellant's statements could be a "true threat." Therefore, we overrule appellant's as-applied overbreadth challenges in his sixth and seventh issues.

B.  Vagueness Challenge

We next turn to appellant's facial vagueness challenges in issues two and three and his as-applied challenges in issues six and seven. Ordinarily, a vagueness challenge operates as a limited exception to standing limitations, allowing the consideration of the statute's application to parties beyond those immediately before the court, for instance when First Amendment considerations are involved. *See Ex parte Ellis*, 309 S.W.3d 71, 80 (Tex. Crim. App. 2010).

Relative to these vagueness challenges, appellant has offered several scenarios which, he asserts, could constitute violations of section 22.07(a)(1) as applied to others. However, appellant overlooks the principle that when a statute undergoes a vagueness challenge, where no First Amendment rights are involved, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. *See Bynum,* 767 S.W.2d at 774. Thus, appellant's hypotheticals are of no value in examining his claim that section 22.07(a)(1) is unconstitutionally vague in this instance. Instead, we need determine only whether the statute is unconstitutionally vague as applied to appellant's conduct. *Id.*

Appellant's vagueness challenge urges that the subsection of the terroristic threat statute under which he was convicted fails to give adequate notice of the type of provoked official reaction that would be sufficient to trigger prosecution. In particular, he notes that the subsection does not specify who the threat has to be directed to, and does not specify the officials or agencies "organized to deal with emergencies" that are its object—and thus violates the due process/due course and free speech provisions of the United States and Texas Constitutions.

However, a statute is not rendered unconstitutionally vague merely because it fails to define words or phrases. *Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1977). Statutory words

–10–

and phrases are to be "read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (West 2013); *see* TEX. PENAL CODE ANN. § 1.05(b) (West 2011) (making section 311.011 applicable to Texas Penal Code). Terms not defined in a statute are to be given their plain and ordinary meaning; words defined in dictionaries and with meanings so well-known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012) (citing *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978)). In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood. *Ely*, 582 S.W.2d at 419.

We will first assess appellant's vagueness challenge to the word "reaction" in light of his conduct. In general, the term "reaction" is not vague. A "reaction" is a response to some treatment, situation, or stimulus. *See Reaction*, Merriam-Webster, https://www.merriam-webster.com/dictionary/reaction (last visited Feb. 5, 2018). The record shows that after stating, "I can honestly say when I decide to snap I will personally go around and see how many police officials I can kill. . . .", appellant went on to warn "Dallas police be on notice fr fr." When applied to the conduct of appellant, as shown in the record, the term "reaction" is not vague at all. Appellant's contention that the term "reaction" is vague as applied to him is without merit.

Next, we will review appellant's vagueness challenge to the phrase "agencies organized to deal with emergencies" in light of his conduct. Appellant's post put the Dallas police on notice. We reject any argument that a person of ordinary intelligence would not know that the Dallas police department is an agency organized to deal with emergencies. When applied to appellant's conduct the phrase "agencies organized to deal with emergencies" is not vague.

Finally, we will review appellant's vagueness challenge to the identity of the person who could be threatened with violence in light of his conduct. Appellant's post specifically referenced

and threatened to murder police officials. Police officials are a group of persons as entitled to protection as any other. *See Black*, 538 U.S. at 359. Thus, when applied to appellant's conduct, the reference to the persons against whom violence is threatened is not vague.

Because appellant has failed to show that section 22.07(a)(1) is overbroad and has failed to show that it is unconstitutionally vague as to his conduct, we overrule appellant's second, third, sixth, and seventh issues.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Publish

161256F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUSTIN LEE GARCIA, Appellant

No. 05-16-01256-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 2, Dallas County, Texas
Trial Court Cause No. MB16-75150.
Opinion delivered by Justice Schenck.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of February, 2018.